## Case No. 11,131.
### PICQUET v. CURTIS.
[1 Sumn. 478.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1833.

BILLS AND NOTES — POSSESSION BY INDORSER AS EVIDENCE OF OWNERSHIP — DEMAND AT TIME AND PLACE OF PAYMENT — LIMITATIONS.

1. Where bills of exchange were specially indorsed, and the indorsement still continued uncancelled, and there were no re-indorsements, or other evidence of any subsequent assignment, *held*, that possession by the original indorser is prima facie evidence that he is the owner of them.

[Cited in Jackson v. Love, 82 N. C. 405; Witherell v. Ela, 42 N. H. 296; Austin v. Birchard, 31 Vt. 591.]

2. Where bills of exchange are made payable at a particular place, no action can be maintained until after a demand at that place, and a dishonor there. Therefore, the statute of limitations begins to run from the time of such demand, and not from the time when the bills were payable according to their tenor.

[Cited, but not followed, in Brown v. Noyes, Case No. 2,023. Cited in Cox v. National Bank, 100 U. S. 712.]

Assumpsit on a large number of bills of exchange, drawn on the 4th of July, 1811, by one Fretag in Paris, payable to his own order, on James Swan, (the deceased,) and accepted by him in Paris, payable in Boston, Massachusetts, at different and distant dates. All of them were indorsed to the plaintiff's intestate by Fretag, and fell due between February, 1813, and February, 1822; and all of them were dishonored. The whole amount of the bills was about $97,759. The declaration contained, besides the money counts, a number of counts upon the bills, alleging a title in the plaintiff [Antoine F. Picquet, administrator] by the indorsements to his intestate. Among the pleas there were (1) the general issue to all the counts; (2) the plea of the statute of limitations. Replication to this plea, that James Swan was without the United States, and left no property within the limits of Massachusetts, which was attachable by the ordinary process of law. The defendant [Charles P. Curtis, administrator] rejoined, that Swan left attachable property within the commonwealth, &c.; upon which issue was joined by the parties. Upon these issues the cause came on for trial at the present term; and a verdict was found for the plaintiff. At the trial it was found, that payment of the bills was demanded for the first time in Boston, on the 15th of November, 1823; and the bills were then dishonored and duly protested therefor. Swan never was within the United States after the time, when the bills were drawn; and was at that time domiciled in Paris; and died at Paris in 1831. It did not appear, that

1 [Reported by Charles Sumner, Esq.]

Swan ever had any funds in the United States to pay any of the bills. A motion was now made for a new trial. [For the prior litigation concerning these bills of exchange, see Case No. 11,132, and note.]

Charles G. Loring, for defendant.
Blair & Fletcher, for plaintiff.

STORY, Circuit Justice. The present motion for a new trial has been made on behalf of the defendants, not so much perhaps from any strong doubts as to the points ruled by the court; but from an anxious desire of the defendant acting in autre droit, not to be supposed to omit any practical duty to those, whom he represents. I appreciate the motive; and have considered the points made, with as much care, as if they had been urged in the earnest conviction, that they were beyond question in favor of the defendant.

The first ground is, that the court instructed the jury, that the plaintiff was entitled to maintain the action upon thirteen of the bills, which appeared to have been specially indorsed by his intestate to other persons, notwithstanding the indorsements were not cancelled, when the bills were produced, and there were no re-indorsements, or other evidence, of any subsequent assignment to him, excepting the plaintiff's possession of the bills. And such was certainly the direction of the court. I was aware then, and still am, that the authorities are at variance on this point; but I am of opinion, that the better authorities clearly establish the principle, that the possession of such bills, after such special indorsements by the indorser, is prima facie evidence, that he is the owner of them, and that they have been returned to him, and taken up in due course upon their dishonor; so that he is remitted to his original rights. It seems to me, that this is the natural presumption from the facts; and that it would be difficult upon any other supposition to account for such possession by the indorser, which must deprive the special indorsee of the means of enforcing any adverse rights against him. I do not say, that the presumption is conclusive; but I think it prima facie sufficient to found a title in the indorser until it is rebutted by some controlling circumstances. This doctrine was directly approved by the supreme court of the United States in Dugan v. U. S., 3 Wheat. [16 U. S.] 172, where the court laid down the rule, "that if any person who indorses a bill of exchange to another, whether for value or for purposes of collection, shall come into possession thereof again, he shall be regarded, unless the contrary appear in evidence, as the bona fide holder and proprietor of such bill, and shall be entitled to recover, notwithstanding there may be on it one or more indorsements in full, subsequent to the one to him, without producing any receipt or indorsement back from either of such in-

dorsees, whose names he may strike from the bill, or not, as he may think proper." This doctrine would be conclusive upon my judgment sitting here, even if I entertained doubts upon the subject. But I was one of those judges who concurred in that opinion; and I now adopt it, toto animo, with a solid confidence. And I think it may fairly be inferred, that such is also the French law, from the passage cited so frankly at the bar by the defendant's counsel, from the work of Pardessus on the commercial law of France. 2 Pardessus, p. 179, art. 349.

The other point is, that the court instructed the jury, that the statute of limitations began to run from the time of the presentment for payment, to wit, on the 15th of November, 1823; and not from the times when the bills were respectively payable according to their tenor. I remain of opinion that this direction was right, according to the principles of the common law. It is to be recollected, that this is a suit against the acceptor of the bills, and that they were payable in Boston. In my judgment, no action could be maintained until after a demand was made in Boston, and a dishonor there. The decision of the house of lords in the great case of Rowe v. Young, 2 Brod. & B. 165, 2 Bligh, 391, settled this, as to inland bills, upon principles, which strike my mind as irresistible. And there cannot, I believe, be found a single authority, that denies it in relation to foreign bills. It would, in my humble judgment, be a monstrous doctrine, to hold, that upon a bill drawn upon England, and accepted here, payable in England at a particular time after date, the holder might maintain an action against the acceptor without transmitting the bill to, or asking payment in England.

I have looked into the Code of Commerce of France, to ascertain, whether any different rule is there established; for, as these bills were contracts made in France, and the acceptances in France, the rights and responsibility of the acceptor may, in some measure, depend upon the laws of France, although payment is to be made in Boston. What I have been enabled to find, satisfies me, that by the law of France, in cases of this nature, there must be a demand of payment of the bills at the place assigned, and a protest of dishonor, before a suit is maintainable against the acceptor. The 123d article of the Code of Commerce declares, that the acceptance of a bill of exchange, payable in another place than that of the residence of the acceptor, must indicate the domicil, where the payment is to be made, or the protest in case of non-payment. Another article (article 173) requires a protest to be made in cases of non-payment; and another (article 184) declares, that interest on the principal of the bill of exchange, protested for non-payment, is due from the date of the protest. These articles seem to me to close all controversy on this point. They show that there is no default in the acceptor, which puts him in mora, or default, until a demand and protest at the place of payment.

I therefore overrule the motion for a new trial.