## E. G. COMPTON V. DANIEL PERRY.

Where a debtor, in order to secure the payment of certain debts, executes a deed of trust, with power to sell, &c., in default of payment, if a sale be made under it, and in pursuance of its terms, and it be fairly made, the title to the property will vest in the purchaser; and a conveyance by the trustee to the debtor's wife, or any other disposition he may see proper to make of the property, will be valid. But if the sale by the trustee be not made according to the terms of the deed of trust, or if, by any understanding between the *cestui que trust,* and the purchaser, it be so made that the property sells for a less price than it is worth, the rights of creditors will not be prejudiced by such sale.

Where the purchaser at such trust sale, receives a deed from the trustee, and one from the *cestui que trust,* for the entire interest, in consideration of advances made, to pay his debts; and at the same time, by another instrument, loans to the former owner, the *property thus purchased, excepting certain* products thereof, which are to be applied to the discharge of advances; and by another instrument of writing, executed at the same time, the purchaser, in consideration of love and affection, conveys all of the said property to a third person, (the wife of the original owner,) in trust, that he and his heirs shall remain in possession, until the profits therefrom, shall pay and discharge the amount due him for such advances; these different instruments are to be taken and construed together, as constituting one and the same transaction.

The effect of these deeds, upon their face, is, to pass the legal title to the property, by way of gift, from the original owner, through the purchaser to the last grantee, (the wife,) subject to the payment of the debts named in the deed of sale, out of the net proceeds of the estate conveyed; to be held, and managed by the purchaser, until payment, after which the absolute right, both of title and possession, would vest in the wife.

The statute of limitations does not run in favor of the claimant of property, against a creditor, until after the recovery of his judgment.

ERROR from Harris. Tried below before the Hon. Peter W. Gray.

This was a suit for the trial of the right of property, commenced on the 4th of May, 1856, by the plaintiff in error, in the statutory mode, by filing an affidavit and bond, and superseding a levy, made by the defendant in error, on two negro slaves, named David and Ransom, by virtue of an execution in

his favor, against Alexander Compton, the husband of the claimant.

Under the issues presented by the pleadings, the claimant asserted title to the property levied on, as her separate property, acquired by gift; she also claimed it under the statute of limitations, alleging that she, and him under whom she claimed, had held possession of the slaves, as his and her own, for more than two years next before the issuing of the execution, by virtue of which the levy on them was made; and that she had taken possession of, and converted to her own use, the slaves, more than two years previous to the rendition of the judgment against Alexander Compton, on which the said execution issued.

The plaintiff, Perry, alleged, by way of answer, that " the claim of the claimant, in said slaves levied on, if any interest she has, is nothing more than a release of an interest, in the nature of that of a mortgagee, and that the various arrangements made by Alexander Compton, the defendant in execution, Warren H. Manadue, the son-in-law of the claimant, by marriage with her daughter, of S. M. Westervelt, and of the claimant, were made with the view to hinder and delay the creditors of the said A. Compton, (of whom plaintiff was one,) in the collection of their just debts; and that by the actings and doings of the various administrators, and administratrix, of the estate of said Manadue, one of whom was the daughter of the said claimant, and the former wife of the said Manadue, and is now one of the securities on the bond of the claimant, are and were made in furtherance, and in carrying out of the design of the original parties; which actings and doings will more fully appear, by reference to the four copies of deeds, three of which bear date the 14th of August, 1848; and which conveyances, by the said Compton and Westervelt, to Manadue, and the subsequent conveyances, leases, and gifts, by said Manadue, were made to hinder, delay, and defraud the creditors of said A. Compton; and that the deed filed by claimant, December 5th, 1856, in this cause, executed by Ann E. Young, and Overton Young, in her or their representative capacity, to the claimant, bearing date

the 5th day of December, 1855, was made in furtherance of the original design aforesaid. And that if the said deeds are in any way valid or binding in law, that the said Manadue, under whom the claimant pretends to claim, had only the interest of a mortgagee in the said property, and that any release which the said Manadue, or his representatives, might make, or did make, would, and did operate in favor of the said Compton and his creditors; and that said property levied upon was, at the time of the levy, subject to the plaintiff's execution, by virtue of said levy."

The plaintiff further alleged, that the note on which the judgment was rendered in his favor, against the said A. Compton, upon which the execution issued, was given to renew an indebtedness of long standing, which had been in existence prior to the 14th day of August, 1848. The deeds referred to, were set forth as part of the foregoing answer, and were in substance of the following effect, to wit:—

1. An instrument of writing, or deed of trust, dated the 8th day of March, 1844, executed by Alexander Compton, of the first part, S. M. Westervelt, and King Holstein, of the second part, and Edward Purcell, of the third part, reciting that, in consideration of the making and delivery, by Compton, to Purcell, of his four several promissory notes, for the sums, respectively, of $4770.99, $1500, $1300, and $500, bearing ten per cent. interest, per annum, from date, and due on the 1st day of January, 1845, and, to secure the payment thereof; Compton conveyed to Westervelt and Holstein, a tract of land on Oyster creek, containing 830 acres, being the land purchased by said Compton, from Warren D. C. Hall; also, all the stock, implements, personal property, of every description, growing crops, &c., on the plantation, and about thirty negro slaves, (including the two negroes levied on;) upon trust, nevertheless, that the said Compton, and his heirs, should be permitted to remain in the quiet possession of the said property, to cultivate the plantation, and use the farming utensils, and other articles necessary to make the crops, until default should be made in the payment of the notes; and then, upon the further trust, that when default

should be made in the payment of the said notes, in whole, or in part, it should be the duty of Westervelt and Holstein, or either of them, at the request of Purcell, or the holder of either of the notes, to sell the property, or a sufficient portion thereof, to discharge the said notes, for cash, to the highest bidder, after having first given thirty days' notice.  This instrument further provided, that after any such sale, the excess should be paid, by the trustees, to Compton, after first paying the notes; and the latter bound himself, and his heirs, to deliver to the trustees, on their request, the said property; and, in default of a compliance therewith, they were empowered to sell the same, by a description thereof; and lastly, that if the notes should be paid, without resort to a sale, then the said instrument should be null and void.    (Recorded 19th March, 1844.)

2. An instrument of writing, or indenture, entered into between S. M. Westervelt, of the first part, Alexander Compton, of the second part, and Warren H. Manadue, of the third part, on the 14th day of August, 1848, which, after referring to the preceding deed of trust, and reciting the fact, that the said Manadue was the owner of the said notes, and that a sale had been made under it on the 14th day of August, 1848, according to its terms and conditions, by Westervelt, one of the trustees; conveyed to W. H. Manadue, the purchaser at said sale, at the price of $4380, all of the property mentioned in the deed of trust, (including the two negro men levied on, as aforesaid, by Perry.)  And recited and provided, that whereas, Manadue had become the assignee and owner of several judgments rendered against Compton, in the District Court of Brazoria county, (specifying judgments against himself, in favor of divers persons, amounting to about $1700, not including any claim in favor of Perry,) and that Compton was desirous of paying, and discharging the notes, and the judgments aforesaid; and that, in consideration of the release by Manadue, of Compton, from the payment of the notes and judgments, which were acknowledged to be discharged and released, Compton conveyed to Ma-

nadue, all of the said property heretofore described.    (Recorded 28th October, 1848.)

3. An instrument of writing, bearing the same date as the last described writing, between W. H. Manadue and Alexander Compton, which referred to, and made the last described instrument a part of it, and provided, that whereas, the said Manadue was desirous of cultivating the said land, and of keeping the said property together, and putting other property on the said land, for the purpose of cultivating the same, and of keeping up the plantation; the said indenture witnessed, that the said Manadue, in consideration of the love and affection which he had for the said Compton and family, had lent, and by the said presents, did grant and lend to the said Compton, all and singular the property aforesaid, and all other property, with the exception of the cotton, which might be made or placed on the said plantation, as well the increase of the slaves, and the stock of horses, cattle, &c. And that it was understood between the parties, that the said Manadue might, at his own free will and pleasure, declare the said contract at an end, either as to the whole, or any part of said property, at any time or times he might choose to do so; and it was further understood, that the crops of cotton, thereafter made on the said plantation, were to belong to, and be controlled by, the said Manadue, and that the other crops were to be "applied by the said Compton, towards the support of himself and family, and in keeping up the said plantation; and the excess, if any, to belong exclusively to the said Manadue.    The said Compton bound himself, to deliver any, or all of said property, to said Manadue, whenever the said Manadue should, in writing, require him to do so; he furthermore bound himself not to sell, or otherwise dispose of, any of said property, contrary to the true intent, and meaning, of the said indenture."    (Recorded 28th October, 1848.)

4. An instrument, bearing the same date as the two preceding, being a conveyance from W. H. Manadue to Elizabeth G. Compton, in consideration of his love and affection for her, of the property described in the indenture, or instrument, last set forth

and described, to which reference was made, as also to the deed to which reference was made therein, and made a part of the said instrument, by its recitals to that effect. But this indenture was made in trust, and upon conditions that the said Manadue, and his heirs, should remain in the quiet and unmolested possession of the said property, until the net profits arising from the sale of the crops, and other things which might be made on the plantation, or which might accrue from the hire of the property, after applying a sufficient amount for the support of the said Compton's family, and for keeping up the plantation, would discharge the amount due on certain notes and judgments, which the said W. H. Manadue held against the said Alexander Compton, with ten per cent. per annum interest thereon, from that date, were fully paid and discharged; and until the said Manadue should be fully reimbursed for any expense he might incur on account of the said property, and for any sum or sums which he might pay for, or on account of, or at the written request of, the said Elizabeth G. Compton, or of any other person; provided as aforesaid, that she should, in writing, request the said Manadue to advance the money, or pay the debt: and for the consideration of the love and affection aforesaid, the said Manadue agreed and bound himself, that he would, whenever requested to do so, by the said Elizabeth G. Compton, convey to her absolutely, by deeds of gift, all such property, real and personal, as was then, or might thereafter be exempted from seizure under execution. And that nothing in the said deed contained, was intended to weaken or destroy the right, or title, of the said Elizabeth G. Compton, in, and to, the property aforesaid; and more particularly to the said tract of land, in whatsoever way her interest might have been acquired. And that whenever all the debts aforesaid were paid, the said Manadue, would make such other and further title, as would effect the true object thereof. (Recorded 1st January, 1852.)

5. A deed from Overton Young and Ann E. Young, administrators *de bonis non* of the estate of W. H. Manadue, to Elizabeth G. Compton, which recited that, on the 31st day of

December, 1851, the County Court of Brazoria county, in the matter of Elizabeth G. Compton, against Eli M. Justice, then administrator of said estate, rendered its decree, that when the debts paid by said Manadue (and hereinbefore recited in the preceding deeds) should be paid to said administrator, he should deliver all the property described in the preceding deeds, together with the increase thereof, to the said Elizabeth G. Compton, and deliver to her a deed of release to the same; and that, whereas, since the rendition thereof, the said Justice had ceased to be the administrator, and the said Overton and Ann E. Young had been duly appointed administrators, &c.; and whereas, the said debts had been fully paid to the estate of said Manadue, therefore, they, the administrators aforesaid, conveyed the said property, real and personal, to the said Elizabeth G. Compton. (Deed dated 5th day of December, 1855. Recorded 7th day of January, 1856.)

Perry, the defendant in error, brought his suit against Alexander Compton, in the county of Brazoria, on the 22d day of March, 1853, on a note for $1742, dated February 11th, 1853, payable to himself or order, on the 1st day of March, 1853. Judgment was rendered against the defendant in that suit on the 17th day of May, 1853, for the amount. By virtue of an execution issued on the above judgment, the two slaves, the right to whom are in controversy in this suit, were pointed out for levy, by the plaintiff in execution, as the property of Alexander Compton; whereupon, the plaintiff in error, Elizabeth G. Compton, interposed her claim to the same, as before stated.

The cause was submitted to a jury, under the issues as made up, and the court charged the jury, as follows:

"There are two issues to be decided by the jury, under the rules of law applicable to each. 1st. Were the deeds of August, 1848, fraudulent as to creditors? 2d. Was the plaintiff's claim barred by the statute of limitations?

"The deed from Compton to Westervelt, in trust for Purcell's benefit, was valid, and if the property conveyed by it was fairly sold by the trustee, according to the terms of the deed, then

the title to such property would vest in the purchaser, and he could do as he pleased with it, without regard to other creditors of Compton; but if the sale under that deed was not fairly made, then no title vested under Westervelt's deed. If, then, from the evidence, you believe, that the sale by the trustee was made after due notice given, and at the place specified, according to the terms of the trust deed; and that it was sold for its full and fair value, then the purchase by Manadue, and his deed to Mrs. Compton, were valid, and you will find for the defendant. But if you believe from the evidence, that the sale by the trustee was not made according to the terms of the deed of trust, or that there was an understanding between Compton and Manadue, that Manadue should buy the property, and that in consequence of such understanding, the sale was so made, that Manadue might purchase at less than its fair value; then Manadue's right to the property, and the claimant's also, depend on the validity of the deed from Alexander Compton, to Manadue, which he executed with the trustee, Westervelt. This deed, having been executed at the same time, with the agreement between Mr. Compton and Manadue, relating to the land, &c., and with the deed from Manadue to Mrs. E. G. Compton, they are to be taken and construed together, as constituting one and the same transaction. The legal effect of these deeds, *on their face*, is to pass the legal title by way of gift, from Mr. Compton, through Manadue, to, and in, Mrs. Compton, subject to the debts named in the deed of sale, out of the net proceeds of the estate conveyed, to be held and managed by Manadue, until payment, after which, the absolute right, both of title and possession, would vest in her; and if from the evidence, you believe that all the property of Mr. Compton liable to execution, was conveyed thereby, and that he was embarassed with debts, and that the plaintiff's claim was a just debt, existing at the time, you will find for plaintiff, on the issue of fraud, but otherwise, find for the defendant.

. "On the question of limitation, if you believe from the evidence, that the property in controversy, was conveyed by the deeds before-named; that the possession was delivered to Mana-

due or claimant, and that she, or Manadue, or both of them together, claiming in the same right, had been in peaceable possession of the slaves, for more than two years before the levy was made, and that their claim, was publicly and notoriously adverse to the right of Mr. Compton, or was known to plaintiff to be so, for that time, then you will find for defendant, on the issue of limitation, but otherwise, for plaintiff."

It was proved on the trial, that the note on which Perry obtained his judgment, was given for a debt contracted in 1844, by Compton's son-in-law, and one Morton; and that it had been renewed once or twice.

Verdict for plaintiff, Perry; upon which the court rendered judgment against the defendant, (claimant,) and her securities, for ten per cent. damages on the amount of the debt, the value of the property levied upon, for the trial of the right of which, bond was given, together with all costs.

The defendant filed a motion for a new trial, on the ground that the verdict was contrary to the evidence, and the charge of the court. This motion was overruled. The defendant excepted to the ruling, and also to the charge of the court.

The plaintiff in error, assigned as errors, the overruling the motion for a new trial; " that the court charged the jury in conflict with the law, on the trial before the jury;" and that " the jury, in rendering a verdict, though properly charged by the court, as to the law, on the statute of limitations, which was interposed as a defence, found their verdict in conflict with said charge, and yet the court refused to set aside the verdict."

*Peter MacGreal* and *Robert Hughes*, for the plaintiff in error.

*J. B. Jones*, for the defendant in error.

*C. B. Sabin*, also, for defendant in error, cited Jones v. Read, 1 Humph. Rep. 335; Mark v. Rucker, Id. 348; Reynolds v. Lansford, 16 Texas Rep. 286; Walcott v. Brander, 10 Id. 419; Mosely v. Gainer, Id. 393; Fowler v. Stoneum, 11 Id. 478.

WHEELER, C. J.—The assignment of errors does not indicate the supposed error in the charge of the court; nor is it perceived that there is any error, of which the appellant can complain. The legal effect, of the several deeds referred to, by which the title to the property was conveyed to Mrs. Compton, was correctly stated. And so was the effect of such a conveyance, under the circumstances indicated, upon the rights of antecedent creditors of the grantor. (Reynolds v. Lansford, 16 Texas Rep. 286.) There was evidence, that the plaintiff was such creditor; that the debt, upon which his judgment was recovered, was contracted in 1844. The questions of fact, proper to be submitted to the jury, were fairly submitted to their decision, by the charge of the court; and we cannot say, that their verdict was not warranted by the evidence. The statute of limitations did not commence to run against the plaintiff until his judgment was recovered, and he was thereby in a situation to enforce his demand against the property. (Id.) That was less than two years before the levy of the execution. The bar of the statute, therefore, had not interposed in favor of the claimant.

We are of opinion, that there is no error in the judgment, and it is affirmed:

Judgment affirmed.

BELL, J., having been of counsel, did not sit in this case.