BUCHANAN *et al.*, Executors, v. MARSH *et al.*

1. **Judgment:** LIEN. A foreign judgment is not a lien upon the real estate of the judgment defendant before a judgment has been rendered thereon by a court of this State.

2. **Injunction:** CREDITOR. A creditor is not entitled to an injunction to restrain the sale of real estate by his debtor before he has recovered a judgment upon his demand, which is a lien upon such estate.

3. —— STATUTE CONSTRUED. Chapter 155 of the Revision of 1860 does not authorize a prohibition, at the instance of a creditor, to prevent his debtor from disposing of his real estate.

*Appeal from Johnson District Court.*

SATURDAY, DECEMBER 10.

IN July, 1864, plaintiffs, as administrators of the last will and testament of Robert W. Harris, deceased, filed their petition seeking to recover nearly sixteen thousand dollars, which they claim to be due and owing upon a judgment rendered in the name of decedent in the Court of Queen's Bench at Toronto, in the Province of Upper Canada, on the 18th of May, 1858. This judgment was against Richard L. and Henry M. Marsh, and was revived in the said Court of Queen's Bench in the name of the present

plaintiffs, as administrators, with the will annexed, of Robert W. Harris, deceased. The petition also states, that one of said debtors has bought with his own means certain parcels of real estate in the name of his wife and co-defendant, Margaret Marsh, with the intention of cheating and defrauding his creditors, and especially the said plaintiffs. The prayer is for judgment for the amount claimed against the said Richard L. and Henry M., and for an injunction restraining the said defendants from alienating or incumbering said real estate so purchased in the name of the said Margaret, until the rights of said plaintiffs can be determined and adjudicated. On defendants' motion, the injunction granted in accordance with the prayer of the bill was dissolved, and from this order plaintiffs appeal.

*Robinson & Patterson* for the appellants.

*Edmonds. & Ransom* for the appellees.

WRIGHT, Ch. J.—Several questions are discussed by counsel; but we shall confine ourselves to the more material ones, these being sufficient to fully dispose of the case now before us.

1. JUDG-
MENT; lien.

Plaintiffs are not judgment creditors. For the purposes of the present inquiry, their action is like any ordinary one upon a note, account, or any simple contract, or evidence of indebtedness. They have a foreign judgment; but, until it becomes a judgment in our courts, they are no more than creditors at large, and until they obtain the recognition of their claim by the adjudication of our State tribunals, they have no other or different rights as to the property of their debtor than if their demand was indorsed by a less solemn or conclusive proceeding or instrument. For, however effectual such judgment may be, or whatever the faith and credit to which it may be entitled, it is very certain

that it cannot be enforced here until its validity is recognized and passed upon by the judgment of our courts.

This being so, upon common law principles, we know of no principle upon which plaintiffs were entitled to this injunction. The rule is, as far as we know, without exception, that the creditor must have completed his title at law, by judgment (if not by execution), before he can question the disposition of the debtor's property. *Angell* v. *Draper*, 1 Vern., .399; *Shirley* v. *Watts*, 3 Atk., 200; *Bennett* v. *Musgrave*, 2 Ves., 51; *Wiggins* v. *Armstrong*, 2 Johns. Ch., 144; Jeremy's Eq., 161. The reason of the rule is, that, until the creditor has established his title, or his debt, by the judgment of a court, he has no right to interfere; for, unless he has a certain claim upon the property of the debtor, he has no concern with his frauds. To establish any other rule, might lead to an unnecessary and perhaps fruitless and oppressive interruption of the exercise of the debtor's rights. 2 Johns. Ch., *supra*.

*2. INJUNC-TION: creditor.*

We are, then, to inquire how far this rule has been changed by statute. Appellants rely upon chapter 155 of the Revision, entitled, " Prohibition in an action by ordinary proceedings." The material portions of this chapter are found in § 3798, which declares that, "in all cases of breach of contract or other injury, where the party injured is entitled to maintain, and has brought, an action by ordinary proceedings, he may, in the same cause, pray and have a. writ of injunction against the *repetition* or *continuance* of such breach of contract, or other injury, .or the committal of any breach of contract, or injury of a like kind. *arising out of the same contract*, or *relating to the same property or right*, and he may also, in the same action, include a claim for damages or other redress."

*3. ——— Statute construed.*

It seems to us, however, but too apparent that this pro· vision does not, in the least, aid appellants' case. Did they propose to restrain the repetition or continuance of defend-

ant's breach of their contract to pay this judgment (if such a thought is allowable), there might be some reason for their proposition. But they propose nothing of this char· acter. What they propose to restrain defendants from doing does not, in any proper sense, arise out of the contract sued on, nor does it relate to plaintiffs' property or right in the contract. A patent case under this statute would be, where it is sought to compel a defendant to abstain from an act in violation of his covenant, or to restrain him from a continu· ance of the same injury, as in the case of a nuisance, or the repetition of a trespass, or the practicing of a profession or carrying on a trade within a particular district. And, there· fore, it was held, in *Hall* v. *Crouse et al.*, 14 Iowa, 487, that, in an action at law to recover damages for cutting and carry· ing away timber, plaintiff might have an injunction to prevent a repetition of such trespasses. In such a case it is not necessary, as in equity, without the aid of the statute, to show that the injury is irreparable, or that the trespasser is insolvent and unable to respond in damages for the injury, or the like; but it is sufficient that the party claims a legal right, and seeks to prevent a repetition of the same wrong, or the continuance of an injury relating to the same right or property. The plaintiff, instead of being confined to his redress for the injury sustained, is by this statute given a remedy for preventing the continued commission of the same. The theory of plaintiffs' counsel would, however, enlarge and extend the purpose of the statute far beyond what was ever contemplated by the legislature, or the report of the English commissioners from which we borrow this chapter.

We need hardly say that the authorities cited by counsel have no application to cases of this character. There is, in the present state of this case, no controversy respecting the title to this land, as in *King* v. *King*, 2 Vesey, 192. Nor is it a case where a trustee is about to transfer or use pro·

perty to his own benefit, to the injury of the beneficiary, as in *Osborn* v. *The United States*, 9 Wheat., 844. Nor, still again, is it a case where the vendee seeks to restrain a vendor from conveying the legal title pending a suit for a specific performance, as in *Echliff* v. *Baldwin*, 16 Ves., 269. And see other cases cited in 2 Story's Eq. Jur., §§ 907, 908, 953–955. The same and similar cases are referred to in Eden on Injunctions, vol. 1, p. 12; vol. 2, p. 339 (marg.), note 1, and pp. 342, 343. It is true that plaintiffs allege that these debtors brought money with them from Canada, and invested the same in these lands. But they were not in any sense the trustees of plaintiffs in relation to such funds, nor have plaintiffs any right in equity to follow the same into the lands thus purchased. If they had, their remedy would be very clear, and their rights very different.

Affirmed.