Cole, Ch. J.
The plaintiff, as administrator of Jedediah Brown, deceased, in his petition avers: 1st. That the defendant has received $916 in money, without right from one Days to the use of the testate. 2d. That the defendant wrongfully intermeddled with the property of the deceased and without right collected $916 in money, etc.; and 3d. “That after the death of Jedediah Brown the defendant became wrongfully and fraudulently possessed of a certain promissory note made by said Days to the said Brown, and afterward collected from the makers thereof the sum of $975; that defendant collected said money under the pretense of being the owner of said note by title from Elizabeth Brown, widow of said Jedediah Brown; that said widow obtained said note of her said husband, by gift, prior to his decease; that such possession and ownership is fraudulent, as against the creditors and estate.; that there are not sufficient assets of said estate to pay the indebtedness; that at the time said gift was made the said deceased was insolvent, «and that his estate is still insolvent; that defendant is not a bona fide holder of said note, but holds the same in trust for the estate.” The answer denies every allegation of the petition, and also avers that defendant was a bona fide holder of the note for value; that Jedediah Brown was solvent at the time he gave the note to Elizabeth, and that the estate is now solvent.
The cause was tried to a jury. The testimony tended to establish that plaintiff was administrator of the estate of Jedediah Brown, deceased; that decedent, a short time prior to his death, had a note made by. Days to him for $3,000, about one-half of which had been paid; that he gave said note to his wife, Elizabeth Brown, now his widow, for her support, and she then took the same into her possession; that, after Brown’s death, his widow collected a part of said note, and the defendant, for her, collected other sums upon it; that defendant thus having got possession ot the note, and having full knowledge of all the facts, set up *464 some claim to it as against Elizabeth, which was finally-settled between them by the defendant paying her such property as she agreed to accept, and the note was transferred to him — the balance then dne being about $916, which defendant has collected or converted. There is a conflict in the testimony as to the insolvency of Brown and of his estate — the jury might have found, from the evidence, both to be insolvent.
The court gave a series of instructions to the jury. The second and fourth were as follows: “ If you find from the evidence that Jedediah Brown during his life-time gave or sold the note to Mrs. Brown, and the gift or sale was executed by delivery of the note to her, and that defendant did not pay for the same out of the property of the estate of Jedediah Brown, then the plaintiff cannot in this action attack a transfer made by Jedediah. Brown, for the reason that it is fraudulent as .to creditors.”
“ An administrator cannot maintain an action to set aside a transfer of personal property, on the ground of its being a gift, and therefore fraudulent as to existing creditors when the property has passed 'to a third party for a valuable consideration.” To the giving of these instructions the plaintiff duly excepted, and now assigns the same as error.
These instructions involve, first, the question whether an administrator of a decedent’s estate can maintain an action grounded upon the voluntary or fraudulent alienation of property by the decedent, when the estate is insolvent and the property or its value is required for the payment of the debts ? And, second, if such action can ever be maintained, what effect does a transfer of the property to a third person have upon the rights of the administrator ?
Ordinarily it must be true that an administrator can only maintain such actions at law as the intestate might, if living. This must be invariably so as to all actions for the enforcement of rights grounded upon the inheritance. So far as the administrator represents the heirs, and the *465 actions brought by him are to secure their rights or interests, he must be limited to such as the decedent himself might have maintained. But under our general statutes relating to the distribution of estates and the duties of administrators, the latter are charged with certain trusts, in favor of the creditors of the estate. They are required to collect the assets and to pay them over to the creditors. Whatever ought to be applied to the payment of the debts, ought to be recoverable by the administrator, representing the rights and interests of the creditors; Unless property voluntarily and fraudulently conveyed by the decedent can be thus reached by the administrator, the creditors must either go without remedy or they must be permitted to bring actions in their own names, thus involving a multiplicity of suits and interfering with the singleness of the administration.
We are aware that in the strictness of the common law it has been held that such an action could not be maintained at law, but resort must be had to a court of equity. Benjamin v. Le Baron's admr., 15 Ohio, 517, and authorities there cited by counsel. See also the dissenting opinion of Birchard, J., holding the contrary view. In New York such an action can be maintained under their statute. Dox v. Backentose's admx., 12 Wend. 542; Babcock v. Booth, 2 Hill, 181; Bates v. Graham, 11 N. Y. 237; section 2464 of our Beyision, limiting and regulating the liability of executors de son tort, may have no bearing upon this case. Elder v. Littler, 15 Iowa, 65. If it should even be held that an action in equity was necessary to enforce the right claimed in this case, it would not be difficult, under our fact system of pleading, to hold that the plaintiff has stated a cause of action, and no objection being made at the proper time, as to the forum, that objection was waived. We are satisfied that, under our statute and system of pleading, the action, upon proper proof, may be maintained by the administrator.
*466 It being settled that tbe action may be maintained, there remains but little doubt that a purchaser of the property, with knowledge of all the facts, would stand in no better position than the original party. The fact that he had paid a valuable consideration would not alone protect him. The purchaser, or third person, to protect himself, must not only have paid a valuable consideration, but he must have bought in good faith and without notice of the defects in the title. The instructions omitted the element of knowledge on the part of the defendant, and for this they were erroneous.
Reversed