P. E. SOMERS, M. D., Appellant, v. AIMEE H. SPAULDING et al.,
Appellees.

No. 45247.

NOVEMBER 12, 1940.

REHEARING DENIED MAY 16, 1941.

Tomasek & Vogel, for appellant.

J. G. Shifflett, for appellees.

MILLER, J.—Several facts are undisputed under the record herein. They include the following: Prior to August 10, 1932, Henry W. Spaulding, now deceased, and his wife, Aimee H. Spaulding, one of the defendants, were indebted to the plaintiff in the sum of $700 for professional services. On August 10, 1932, Henry W. Spaulding paid plaintiff $350 on said account and the defendant Mrs. Spaulding executed and delivered to plaintiff her note for $350 due August 10, 1934. On the same day, to wit, August 10, 1932, Mr. and Mrs. Spaulding executed and delivered a deed conveying 160 acres in Poweshiek county, owned by Mrs. Spaulding, to their daughters Alice Spaulding Blair and Henryétta Spaulding Van Gorder, defendants herein. The deed was recorded the same day it was executed. On September 13, 1938, plaintiff obtained a judgment against Mrs. Spaulding on the note given to him as afore-

said and secured the issuance of an execution on the judgment, which was returned unsatisfied.

On September 22, 1938, plaintiff commenced this action wherein he seeks to set aside the conveyance of the aforesaid 160-acre farm, asserting that it was a gift without consideration and executed with the intent to hinder, delay and defraud the plaintiff in the collection of his promissory note. Various defenses were asserted by the defendants, including waiver, equitable estoppel, statute of limitations and laches. The court found generally in favor of the defendants, entered judgment dismissing the action and plaintiff appeals.

It is only necessary that we discuss one of the defenses asserted herein, namely, that of laches, since we are convinced that the judgment must be affirmed on that defense. This makes it unnecessary to discuss many of the propositions argued in the briefs.

In the case of Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633, this court established the following propositions: An action to set aside a conveyance as fraudulent is barred within five years after the cause of action accrues. The recording of the conveyance is constructive notice to the plaintiff and he is deemed to have discovered the fraud at the time that it was recorded. The plaintiff's cause of action does not accrue until he obtains a lien upon the real estate conveyed, either by attachment or judgment. Such a lien must be secured within a reasonable time. Plaintiff cannot, by his inaction, postpone the running of the statute indefinitely. If he fails to secure his lien within the time limited by the statute for the bringing of the action, in the absence of special circumstances, he will be denied the right to maintain the action because of laches.

In holding that the recording of the instrument is the equivalent of discovery of the fraud, we state at pages 427 and 428 of 92 Iowa, page 634 of 60 N. W., as follows:

"This case was one heretofore solely cognizable in a court of chancery, and, therefore, comes within the provisions of the statute before quoted; and it is claimed that the action is barred within five years after the discovery of the alleged fraud. It has frequently been held by this court that the record of a deed is notice to the world of its contents, and that,

where a deed which is fraudulent as against creditors is spread upon the public records, notice to the world is given of its character, or at least sufficient information is conveyed thereby, in the absence of special circumstances, to put creditors upon inquiry as to its contents and character. Gebhard v. Sattler, 40 Iowa, 152; Bishop v. Knowles, 53 Iowa, 268, 5 N. W. Rep. 139; Garden v. Cole, 21 Iowa 205; Hawley v. Page, 77 Iowa, 239, 42 N. W. Rep. 193; Laird v. Kilbourne, 70 Iowa, 83, 30 N. W. Rep. 9; Francis v. Wallace, 77 Iowa 373, 42 N. W. Rep. 323. Following these cases, we must hold that plaintiff discovered the fraud in these conveyances at the time they were recorded.''

In holding that the plaintiff must have a lien either by judgment or attachment before a cause of action is said to accrue so that the statute may commence to run against it, we state at pages 428 and 429 of 92 Iowa, page 634 of 60 N. W., as follows:

''At the time of the discovery of the fraud, however, plaintiff's right of action had not accrued. Before he could institute his action to subject the land to the payment of his claim, he must have had a lien upon it either by attachment or judgment. Clark v. Raymond, 84 Iowa, 251, 50 N. W. Rep. 1068; Faivre v. Gillman, 84 Iowa, 573, 51 N. W. Rep. 46; Gwyer v. Figgins, 37 Iowa, 517; Gordon v. Worthley, 48 Iowa, 429; Pearson v. Maxfield, 51 Iowa, 76, 50 N. W. Rep. 77; Miller v. Dayton, 47 Iowa, 312; Taylor v. Branscombe, 74 Iowa, 534, 38 N. W. Rep. 400.

''As plaintiff's cause of action did not accrue until he obtained his judgment on September 15, 1891, the statute did not begin to run until that time, although he had knowledge of the fraud, which he complains was perpetrated nearly eighteen years before; and as he commenced this suit within a few months after he recovered his judgment, the action, strictly speaking, is not barred. This is the holding in other states under similar statutes. Gates v. Andrews, 37 N. Y. 657; Compton v. Perry, 23 Tex. 414; Eyre v. Beebe, 28 How. Pr. 333; Reynolds v. Lansford, 16 Tex. 286; Bump, Fraud. Conv. [2 Ed.] p. 547; Wilson v. Buchanan, 7 Gratt. 334, and authorities cited.''

In holding that the plaintiff cannot postpone the running of the statute indefinitely and that, where he fails to secure a lien within five years after discovery of the fraud (recording of the instrument), he will be deemed guilty of laches and will be denied the right to maintain the action, we state at pages 429 and 430 of 92 Iowa, pages 634 and 635 of 60 N. W., as follows:

"While, as we have said, the action is not, strictly speaking, barred by the statute, yet there must be some limitation to the right of putting the claim in judgment. A party will not be allowed to postpone the running of the statute indefinitely. One must not be allowed to sleep over his rights, to the prejudice of the party of whom he makes a claim, and who, by the delay, may be deprived of the evidence and the means of effectually defending himself. The claim must be reduced to judgment within a reasonable time, otherwise it will be considered stale, and no relief will be granted. What is this reasonable time cannot be settled by any precise rule. It must depend upon circumstances. If no cause for delay can be shown, it would seem reasonable to require the judgment to be obtained within the time limited by the statute for bringing the action. In accordance with this rule it has frequently been held that where a demand or some other act is required of a plaintiff as a condition precedent to his right to sue, the demand must be made in a reasonable time, and this time, unless there be some special circumstances shown, will be fixed in analogy to the statute of limitations. Codman v. Rogers, 10 Pick. 112; Palmer v. Palmer, 36 Mich. 487; Railway Co. v. Byers, 32 Pa. St. 22; Wenman v. Ins. Co., 13 Wend. 268; Picquet v. Curtis, 1 Sumn. 478, Fed. Cas. No. 11131; Raymond v. Simonson, 4 Blackf. 77; Holmes v. Kerrison, 2 Taunt. 323; Stanton v. Stanton, 37 Vt. 411; Kraft v. Thomas, 123 Ind. 513, 24 N. E. Rep. 346; Keithler v. Foster, 22 Ohio St. 27; Morrison v. Mullin, 34 Pa. St. 12; Phillips v. Rogers, 12 Metc. (Mass.) 405; McDowell v. Bank, 20 Ala. 312. This doctrine is the accepted rule in this state (Ball v. Ry. Co., 62 Iowa, 751, 16 N. W. Rep. 592; Reizenstein v. Marquardt, 75 Iowa, 294, 39 N. W. Rep. 506)."

The position taken by this court in the case of Mickel v. Walraven, supra, above quoted, was expressly re-announced,

adhered to and quoted with approval in the recent case of Bristow v. Lange, 221 Iowa 904, 266 N. W. 808. In holding that the plaintiff is required to obtain a lien within five years after the discovery of the alleged fraud, we state at page 916 of 221 Iowa, page 814 of 266 N. W., as follows:

"If, therefore, it can be said that plaintiff's cause of action to set aside the deed was not strictly barred by the statute of limitations, because of the necessity of securing a lien by attachment or judgment prior to the commencement of the action to cancel the deed, such action should have been taken within a reasonable time thereafter, and that such reasonable time 'unless there be some special circumstances shown, will be fixed in analogy to the statute of limitations.' Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633, 635; Stubblefield v. Gadd, 112 Iowa 681, 84 N. W. 917.''

Again, at page 918 of 221 Iowa, page 815 of 266 N. W., we state:

"Appellee, of course, had an additional period of time to commence his action upon the note, but if he, as a creditor, desired to take advantage of his right to commence an action to set aside the fraudulent conveyance within the statutory period for so doing, it necessarily follows, unless good cause to the contrary is shown, that it was incumbent upon him to accelerate the commencement of his action upon the note in order to secure a lien against the property in question within the five-year statutory period. * * * So while we do not hold that the action is barred by the statute of limitations, we do hold that plaintiff's action to set aside the alleged fraudulent conveyance is barred by reason of his laches.''

Pursuant to the pronouncements of this court above quoted, it necessarily follows that the court below was right in dismissing this action because the same is barred by laches. Under the record herein, the deed appellant seeks to have set aside was executed, delivered and recorded on August 10, 1932. If such conveyance was fraudulent as plaintiff asserts, he is deemed to have discovered the fraud on that date. It was necessary that he secure a lien upon the property by a judgment or attachment within five years following August 10, 1932, to prevent loss of

his cause of action through laches. No lien was obtained until September 13, 1938, over six years after the deed was recorded. No special circumstances are shown. This lapse of time deprived the plaintiff of his right to maintain the cause of action because of laches. The decision of the trial court is, therefore, right.

Appellant asserts, however, that under our decisions the only lien which will be recognized in an action of this kind is a judgment lien; he was not entitled to a judgment until after his note matured; his note did not mature until August 10, 1934; he obtained his judgment lien within five years after the maturity of the note; therefore, he is not guilty of laches. We do not so interpret our decisions.

In the case of Cooper v. Erickson, 213 Iowa 448, 451, 239 N. W. 87, 88, where a receiver sought to set aside a conveyance as fraudulent, we state that it was necessary that he "first obtain, if he can, a judgment against the alleged debtor * * * or have a lien on the real estate involved." In Michel v. Walraven, supra, we state at page 428 of 92 Iowa, page 634 of 60 N. W., that the right of action accrued when plaintiff obtained a lien upon the land, "either by attachment or judgment." In Bristow v. Lange, supra, at page 916 of 221 Iowa, page 814 of 266 N. W., we make the same statement.

In Goode v. Garrity, 75 Iowa 713, 716, 38 N. W. 150, 151, we state:

"It will be conceded that if the plaintiff had obtained a lien on the property in the hands of Welch by attachment or otherwise, he could in this proceeding remove any clouds cast on his title or right. * * * But until a creditor in some manner obtains a lien on his debtor's property, or has exhausted his remedies at law, or done what is equivalent thereto, he cannot question in equity a fraudulent conveyance or incumbrance of his property made by such debtor, and have the same set aside."

In Taylor v. Branscombe, 74 Iowa 534, 536, 38 N. W. 400, 401, an action was held to be proper, where the creditor attached the real estate in his action for a judgment on the debt and sought to set aside a conveyance and subject the land to the judgment, this court stating:

"The attachment, having been lawfully issued, was a lien

upon the property attached for the security of plaintiff's claim, which may be enforced by a creditor's bill against the lands fraudulently conveyed. See cases cited in 3 Pom. Eq. Jur., notes to sec. 1415. * * * The rule that a creditor's bill may be maintained before judgment, but after the lands have been seized under an attachment, has been recognized by the practice of the courts of this state in cases within our memory."

There is a dispute among the authorities on this question, whether a judgment is the exclusive method of accruing a right to set aside a conveyance as fraudulent. In discussing such conflict it is stated in 24 American Jurisprudence 309, as follows, "The trend of the recent decisions, however, is in favor of the view that where a valid lien has been obtained by attachment, a bill in equity to set aside a fraudulent conveyance may be maintained without a judgment." This trend of the recent decisions is in accord with repeated pronouncements of this court.

Subparagraph 4 of section 12080 and subparagraph 3 of section 12086 of the Code, 1931, expressly authorized and empowered the plaintiff to secure a lien by attachment if the conveyance herein challenged was in fact made "with intent to defraud creditors." Our holding is that such a lien is sufficient to mature a cause of action to set aside a conveyance made in fraud of creditors. Were we to hold otherwise and limit the plaintiff to a judgment lien as the sole means of accruing his cause of action to set aside the deed as fraudulent, we would, by that rule, be lending the aid of our decisions to the perpetration of fraud in such cases. In this case, plaintiff asserts that the defendant executed and delivered the challenged conveyance on the same day that she executed and delivered a note due two years hence. Under appellant's theory, by this transaction, if it was fraudulent, he tied his own hands for two years within which to challenge the conveyance. Anyone knows that within two years the property might have been transferred to innocent purchasers and the plaintiff's recourse to the real estate effectively destroyed. If the note were for a longer period, the opportunity to destroy the right of action would be greatly increased. We are unwilling to so tie the hands of a plaintiff in an action of this kind. We cannot subscribe to the contentions of appellant.

By reason of the foregoing, the decree appealed from is affirmed.—Affirmed.

MITCHELL, SAGER, and HALE, JJ., concur.

RICHARDS, C. J., and BLISS, J., concurring specially.

STIGER and HAMILTON, JJ., dissent.

BLISS, J. (concurring specially)—I concur fully in the majority opinion of Justice Miller. I would also affirm the decree of the trial court upon the additional ground that since the plaintiff-appellant had knowledge of the deed in controversy from the time of its execution and recording in August 1932, and, since he could have procured judgment on his note shortly after its maturity and nonpayment on August 10, 1934, and could have brought his action to set aside the deed well within the five years after the discovery of the fraud, he was guilty of laches in not doing so and in waiting over four years thereafter before bringing the action. He was quiescent for over six years after he had knowledge of the alleged fraud, and could have brought this action over four years before he did. This is a suit in equity, and the facts do not justify a court of equity in excusing the delay. One who asserts that he has been defrauded should be reasonably prompt in bringing an action based thereon. While a court of equity may, and often does, follow statutes of limitation, it is not bound to, and it ought not, where the delay is without reasonable excuse. As stated by Justice Kenyon in Spiller v. St. Louis & S. F. R. Co., 8 Cir., Mo., 14 F. 2d 284, 288:

"Laches is an equitable doctrine, not controlled by or dependent upon statutes of limitation, although courts quite generally consider the time fixed by such statutes in actions at law of like character as having some bearing on the pertinency of the doctrine of laches * * * . The applicability of the doctrine of laches is dependent upon the circumstances of each particular case. Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Abraham v. Ordway, 158 U. S. 416, 15 S. Ct. 894, 39 L. Ed. 1036; Jackson v. Jackson, 175 F. 710, 99 C. C. A. 286; Buchler v. Black, 226 F. 703, 141 C. C. A. 459; Taylor v. Salt Creek Consol. Oil Co. (C. C. A.) 285 F. 532."

The majority opinion, in support of its ground of affirmance, refers to the cases of Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633, and Bristow v. Lange, 221 Iowa 904, 266 N. W. 808. These cases are fully in point, and I agree also with the result reached in each case, but not with the reasoning followed. The Bristow case "reluctantly" follows the Mickel case in holding that "strictly speaking" the statute of limitations had not run in either case. In my humble judgment, the procuring of the judgment lien in each case added nothing to the right of action of the plaintiff, but was but a preliminary step in the procedure, and that, in each case, the statute of limitations had *in fact* run, under the rule of Prescott v. Gonser, 34 Iowa 175, followed in numerous later decisions of this court.

RICHARDS, C. J., concurs in the foregoing.

STIGER, J. (dissenting)—I cannot agree with the majority opinion which holds that a creditor need not recover a judgment before bringing a suit to set aside a fraudulent conveyance and that a right accrues to the creditor to attack such conveyance after securing an attachment or some other lien on the debtor's property other than a judgment lien.

The rule in this state is that a creditor must first recover a judgment against the debtor before he can bring a suit to set aside a fraudulent conveyance. This rule is subject to certain exceptions, not available to defendants, and a creditor may attack a conveyance without securing a judgment by obtaining an attachment or other lien only under circumstances creating an exception to the general rule.

The majority opinion confuses the exceptions to the rule with the rule. In the early case of Buchanan v. Marsh, 17 Iowa 494, at page 496, the court said:

"The rule is, as far as we know, without exception, that the creditor must have completed his title at law, by judgment (if not by execution), before he can question the disposition of the debtor's property. Angell v. Draper, 1 Vern., 399; Shirley v. Watts, 3 Atk., 200; Bennett v. Musgrave, 2 Ves., 51; Wiggins v. Armstrong, 2 Johns. Ch., 144; Jeremy's Eq., 161. The reason of the rule is, that, until the creditor has established his title, or his debt, by the judgment of a court,

he has no right to interfere; for, unless he has a certain claim upon the property of the debtor, he has no concern with his frauds. To establish any other rule, might lead to an unnecessary and perhaps fruitless and oppressive interruption of the exercise of the debtor's rights.''

The pronouncement of the rule in Buchanan v. Marsh, supra, has never been overruled and has been followed and approved in the following cases: Clark v. Raymond, 84 Iowa 251, 50 N. W. 1068; Goode v. Garrity, 75 Iowa 713, 38 N. W. 150; Faivre v. Gillman, 84 Iowa 573, 51 N. W. 46; Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633; Ware v. Delahaye & Purdy, 95 Iowa 667, 64 N. W. 640; Hill v. Denneny, 106 Iowa 726, 77 N. W. 472; Stubblefield v. Gadd, 112 Iowa 681, 84 N. W. 917; Crary v. Kurtz, 132 Iowa 105, 105 N. W. 590, 109 N. W. 452, 119 Am. St. Rep. 549; Federal Reserve Bank v. Geannoulis, 203 Iowa 1385, 214 N. W. 576; Cooper v. Erickson, 213 Iowa 448, 239 N. W. 87; Bristow v. Lange, 221 Iowa 904, 266 N. W. 808. The majority opinion overrules all of the above cases.

This court has recognized certain exceptions to the general rule. In Crary v. Kurtz, 132 Iowa 105, 111, 105 N. W. 590, 592, 109 N. W. 452, 119 Am. St. Rep. 549, the opinion states:

'' 'The reason of the rule,' [judgment a prerequisite] said Wright, C. J., in Buchanan v. Marsh, 17 Iowa, 494, 'is that until the creditor has established his title, or his debt, by the judgment of a court, he has no right to interfere; for, unless he has a certain claim upon the property of the debtor, he has no concern with his frauds.' Clark v. Raymond, 84 Iowa, 251; Goode v. Garrity, 75 Iowa, 713. And ordinarily the judgment must be such as to constitute a lien on the debtor's property. Peterson v. Gittings, 107 Iowa, 306. This latter rule, however, is not inexorable, for in some cases a judgment against the debtor cannot be obtained, as where he is dead. Cooley v. Brown, 30 Iowa, 470; Harlin v. Stevenson, 30 Iowa, 371; Doe v. Clark, 42 Iowa, 123. Or, where the debtor has assigned for the benefit of creditors, his assignee cannot obtain judgment. Schaller v. Wright, 70 Iowa, 667; Mehlhop v. Ellsworth, 95 Iowa, 657.''

In First National Bank v. Eichmeier, 153 Iowa 154, 163, 133 N. W. 454, 458, the court said:

"The claims of plaintiff had not been reduced to judgment prior to beginning this suit. As defendants were nonresidents, this was unnecessary. Relief in the way of judgment against the debtor, and subjecting the land in the wife's name, was rightly sought in the same action. Taylor v. Branscombe, 74 Iowa, 534; Com. Exchange Bank v. Applegate, 91 Iowa, 411."

In Taylor v. Branscombe, 74 Iowa 534, 536, 38 N. W. 400, 401, cited in the majority opinion, it is stated:

"It has been held that a creditor's bill may be maintained, without judgment or attachment, in case the debtor is a non-resident, as were defendants in this case."

The opinion then states:

"The rule that a creditor's bill may be maintained before judgment, but after the lands have been seized under an attachment, has been recognized by the practice of the courts of this state in cases within our memory."

The opinion in the Taylor case, supra, did not cite any Iowa cases to support this latter statement for the good reason that there were none. The majority opinion cites the Taylor case as supporting its conclusion that the general rule is that the securing of an attachment lien authorizes the commencement of a suit to attack a fraudulent conveyance. In the Taylor case, the defendants were nonresidents and the conclusion reached in the case is sound because it is based on an exception to the rule.

In Hill v. Denneny, 106 Iowa 726, 728, 77 N. W. 472, 473, the court states:

"It was said, further, [in Clark v. Raymond, 84 Iowa 251, 50 N. W. 1068] that as a general rule, a creditor's bill cannot be maintained until judgment has been obtained in the principal action," etc. The court then refers on page 729 to the Taylor case as follows:

"In the case of Taylor v. Branscombe, 74 Iowa, 534, some statements were made which seem to be in conflict with the rule stated in the cases cited. It is to be observed, however, that the defendants in that case were non-residents of this state. The

judgment debtor, by means of a fraudulent conveyance, had divested himself of all interest in the land which he could have asserted against his grantee. An action at law, aided by attachment, would have been wholly ineffectual, and the plaintiff would have been without remedy had he been restricted to proceedings at law. The action was commenced in equity, and was aided by attachment, and the right to proceed by that method was sustained. It would have been a reproach to our jurisprudence had there been no remedy in such a case.''

In Ratekin v. Droge Elevator Co., 190 Iowa 596, 598, 180 N. W. 654, 655, the opinion states:

''Contrary to appellee's contention, the evidence conclusively proved J. W. Ratekin a resident of Nebraska. He being a nonresident, it was not necessary for cross-petitioner to reduce its claim to judgment, before questioning the bona fides of his assignment of profits to his father, J. R. Ratekin. Taylor v. Branscombe, 74 Iowa 534; Corn Exchange Bank v. Applegate, 91 Iowa 411; Gates v. McClenahan, 124 Iowa 593; First Nat. Bank v. Eichmeier, 153 Iowa 154.''

It will be observed that in the Ratekin case, supra, the case of Taylor v. Branscombe, supra, is cited as being based on an exception to the rule.

I will refer to some of the cases cited in the majority opinion. It is true that in Goode v. Garrity, 75 Iowa 713, 716, 38 N. W. 150, 151, the court states:

''But until a creditor in some manner obtains a lien on his debtor's property, or has exhausted his remedies at law, or done what is equivalent thereto, he cannot question in equity a fraudulent conveyance or incumbrance of his property made by such debtor, and have the same set aside.''

In the Goode case, supra, the creditor had not obtained any lien or judgment against the debtor's property. On page 716 the court clearly indicates that when it stated ''until a creditor in some manner obtains a lien on his debtor's property'' it meant a judgment lien in the following language:

''* * * we think this position must be sustained, for the

reason that this court adopted such rule many years ago in Buchanan v. Marsh, 17 Iowa, 494. It is there said: 'The rule is, so far as we know, without exception that the creditor must have completed his title at law by judgment, if not by execution, before he can question the disposition of the debtor's property.' In addition to the authorities referred to in the cited case, see Bump Fraud. Conv. 511, and authorities cited in note.''

The majority opinion relies on the case of Mickel v. Walraven, 92 Iowa 423, 428, 60 N. W. 633, 634, wherein it is stated:

''At the time of the discovery of the fraud, however, plaintiff's right of action had not accrued. Before he could institute his action to subject the land to the payment of his claim, he must have had a lien upon it either by attachment or judgment. Clark v. Raymond, 84 Iowa, 251, 50 N. W. Rep. 1068; Faivre v. Gillman, 84 Iowa, 573, 51 N. W. Rep. 46; Gwyer v. Figgins, 37 Iowa, 517; Gordon v. Worthley, 48 Iowa, 429; Pearson v. Maxfield, 51 Iowa, 76, 50 N. W. Rep. 77; Miller v. Dayton, 47 Iowa, 312; Taylor v. Branscombe, 74 Iowa, 534, 38 N. W. Rep. 400.''

The first six cases cited adhere to the general rule that the creditor must first obtain a judgment. The last cited case of Taylor v. Branscombe, supra, supports the statement of the court that an attachment lien is sufficient. In the Taylor case the defendants were nonresidents.

I should state that the case of Taylor v. Branscombe, supra, is consistently cited by subsequent decisions as based on an exception to the general rule.

The real holding of the case of Mickel v. Walraven, supra, is found on page 429 of 92 Iowa, page 635 of 60 N. W., where it is stated: ''The claim must be reduced to judgment within a reasonable time, otherwise it will be considered stale, and no relief will be granted.'' In the Mickel case, none of the exceptions to the general rule was applicable.

The majority opinion contains the following quotation from Cooper v. Erickson, 213 Iowa 448, 451, 239 N. W. 87, 88:

''His action is in the nature of a creditor's bill. Under these circumstances it is necessary that the receiver first obtain, *if he can,* a judgment against the alleged debtor Hans Erickson, the

appellee, or have a lien on the real estate involved.'' (Italics supplied.) The quotation means that a judgment is a prerequisite unless the circumstances bring a case within the exceptions to the rule. The court, in the Cooper case, then quotes from the case of Federal Reserve Bank v. Geannoulis, 203 Iowa 1385, 214 N. W. 576, as follows:

'' 'A number of our early Iowa decisions held that, under these circumstances (where there was no prior judgment), the original claim must be put into judgment before an action on a creditor's bill could be maintained. Later, we held that, *under certain circumstances,* the proceedings for judgment on the original claim and an action to subject the property could be brought in the same proceeding. (The italics are ours).' ''

The court then states:

''No situation amounting to the exceptions referred to in the Federal Reserve Bank case (203 Iowa 1385), supra, is present in the proceedings now under review.''

Bristow v. Lange, 221 Iowa 904, 266 N. W. 808, follows the rule announced in Buchanan v. Marsh, 17 Iowa 494, Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633, Stubblefield v. Gadd, 112 Iowa 681, 84 N. W. 917, all of which are cited in this dissenting opinion.

In the Bristow case, the plaintiff procured a *judgment,* not an attachment or other lien, against the debtor before bringing a creditor's bill.

· The court states, page 913 of 221 Iowa, page 812 of 266 N. W.:

''There is a line of cases holding that although the fraud is presumed to have been discovered on recording of a deed claimed to have been made in fraud of creditors, the action to set aside the deed does not accrue until plaintiff's claim has been reduced to judgment, this being on the theory that the conveyance could not be attacked until after a lien was obtained against the property. Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633; Stubblefield v. Gadd, 112 Iowa 681, 84 N. W. 917; 17 R. C. L. 742, section 106; 17 R. C. L. 755, section 121; Adams v. Holden, 111 Iowa 54, 82 N. W. 468. * * *

"Following the rule laid down by these cases, we are impelled to hold that as the plaintiff in the case at bar did not secure his judgment until April, 1933, and as he commenced his action to set aside the conveyance within a month thereafter, it necessarily follows that 'strictly speaking,' the action to set aside the deed is not barred by the statute of limitations. * * * They [appellants] contend that the action to reduce appellee's claim to judgment should have been commenced within a reasonable time after the maturity of said claim, and his failure so to do barred the action under the doctrine of laches. * * * Appellee, of course, had an additional period of time to commence his action upon the note, but if he, as a creditor, desired to take advantage of his right to commence an action to set aside the fraudulent conveyance within the statutory period for so doing, it necessarily follows, unless good cause to the contrary is shown, that it was incumbent upon him to accelerate the commencement of his action upon the note in order to secure a [judgment] lien against the property in question within the five-year statutory period."

Whenever our decisions have used the words "attachment or judgment lien" or "judgment or other lien", the text clearly shows that, in using the words "attachment lien" and "or other lien", they are referring to the exceptions to the general rule.

The law is stated in 24 Am. Jur. 306, section 175, as follows:

"Subject to certain exceptions noted in the following sections, the rule is elementary that a general creditor must obtain a judgment before he can have relief against his debtor in equity. He must prove his debt, and reduce it to a certainty; this is true of negative as well as affirmative relief. If the claim of the complaining creditor is unliquidated and unadjudicated, he has no standing to have the conveyance set aside as being fraudulent." Crary v. Kurtz, 132 Iowa 105, 105 N. W. 590, is cited as an authority for the text.

Section 11007, subsection 5, 1939 Code, provides that an action for recovery on the ground of fraud must be brought within five years after the action accrues. As defendants are not within exceptions to the general rule, plaintiff's right to

attack the conveyance accrued when he obtained his judgment on the note. Plaintiff obtained his judgment on the note on September 13, 1938, and commenced this proceeding on September 22, 1938. Obviously, this suit is not barred by the statute of limitations.

With reference to the issue of laches, we have often recognized and applied the rule that a claimant will not be permitted to postpone the operation of the statute of limitations an unreasonable length of time by delaying or refusing to take the legal steps essential to the commencement of his suit and the reasonable time within which the prerequisite act must be performed is, in the absence of special circumstances, fixed in analogy to the statute of limitations (five years). Bristow v. Lange, supra; Mickel v. Walraven, 92 Iowa 423, 60 N. W. 633.

Plaintiff's note was not due until August 10, 1934. He reduced the note to judgment, the condition precedent to his right to bring this proceeding, on September 13, 1938. He delayed reducing the note to judgment a little over four years, a period well within the statutory limitation of five years.

Under the rule above stated, plaintiff had five years from the time his note was due to secure his judgment, in the absence of special circumstances. There is no showing by defendants of unusual circumstances that would make it inequitable to permit plaintiff to maintain this suit. There is not one word in the record to indicate that defendants were prejudiced by the four-year delay in reducing the note to judgment. As above stated, the reasonable time within which the prerequisite act must be performed is fixed in analogy to the statute of limitations, which is five years. Plaintiff performed the prerequisite act of obtaining judgment within a reasonable time and it follows that defendants have failed to establish the defense of laches.

In addition to the statute of limitations and laches, defendants pleaded waiver and equitable estoppel. I have carefully read the record and in my opinion defendants failed to establish any of the defenses interposed. I would reverse.

HAMILTON, J., joins in this dissent.