ANTHONY HAZELBAKER

*v.*

MARY ANN GOODFELLOW.

1. HUSBAND AND WIFE—*earnings of the latter under the act of* 1869. Under the act of the 24th of March, 1869, where a husband deserts his wife and children, all the earnings of the wife, together with those of the minor children, are free from liability for the debts of the husband. After the abandonment, the wife, in supporting and caring for the minor children, must be held entitled to their earnings.

2. At the common law, the earnings of the wife belonged absolutely to the husband, and the same rule, under the act of 1869, applies where the labor is performed for the husband or is bestowed on his business or is used in producing the products of his business or calling.

3. But where the labor is for another person with the assent of the husband, then she becomes, under the statute, absolutely entitled to receive and hold the earnings from such labor, whether in property or money.

4. If, with the assent of the husband, the wife were to carry on any kind of business, she would be entitled to the profits, if it was *bona fide* hers, and there was no intent to shield the husband's property from his creditors.

5. So, the husband may, if the transaction is not tainted with fraud, permit his wife to raise and sell grain, stock and other farm products, so as to entitle her to receive the profits free from liability for the debts of the husband.

6.  A married woman brought an action of replevin to recover about five hundred bushels of corn and a mule, claimed by the plaintiff as her sole property, and which had been seized under an execution issued on a judgment against her husband. The debt for which the judgment was recovered was created in January, 1870. The plaintiff and her husband were married in England a number of years before, and had lived together until within three years before the commencement of the suit, in May, 1872. Until that time the husband had been the head of the family, composed of the wife and several children. He at that time deserted his family, saying to them he would support himself, and they must do the same. The corn was planted and cultivated by the plaintiff and the children after the desertion, she having rented the ground, and paid the rent, on which it was grown. The husband at no time made any claim to the property replevied, and he contributed no more than a few days labor in the cultivation of the corn, for which he was hired and paid by his wife the same as any other hired hand; nor did he incur any expense or liability for the cultivation of the corn or the rent of the ground on which it was grown: *Held,* that, under the act of 1869, the wife was entitled to the corn, free from the debts of her husband.

7.  The mule sought to be recovered was from a mare that had been received in exchange for a horse prior to 1869. The horse was purchased by the husband with means earned by the wife while they lived together, and before the enactment of the 24th of March, 1869, and the horse thus purchased was traded for the mare before that time: *Held,* that as the earnings of the wife prior to 1869 belonged to the husband, the horse purchased with such earnings was his property, and also the mare for which the horse was traded, and, under the rule that in the absence of some agreement or contract to the contrary the increase of all domestic animals belongs to the owner of the dam, the mule was the property of the husband.

APPEAL from the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

Messrs. CHITTY & PAGE, and Messrs. BANGS & SHAW, for the appellant.

Messrs. BURNS, BARNES & NEWELL, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in replevin, brought by appellee in the circuit court of Woodford county, against appellant, for about

five hundred bushels of corn and a mule, claimed by appellee as her sole property, and which was seized under an execution and a judgment against the husband of appellee. It appears that the debt was created in January, 1870; that the appellee and her husband were married about eighteen years since in England, and had lived together until about three years before this suit was brought. Until that time, the husband had been the head of the family, composed of the wife and several children. He at that time deserted his family. When he did so, he said to them he would support himself, and they must do the same.

The corn was planted and cultivated by appellee and the children, she having rented the ground and paid the rent on which it was grown. The husband of appellee at no time made any claim to the property replevied; and appellee testified he contributed no more than a few days labor in its cultivation, for which he was hired and paid by his wife as she would have done any other hired hand; nor did he incur any expense or liability for its culture or the rent of the ground upon which it was grown.

'The mule was from a mare that had been received in exchange for a horse prior to 1869. The horse was purchased by the husband with means earned by the wife whilst they lived together, and before the enactment of the 24th of March, 1869; and the horse thus purchased was traded for the mare before that time. It is claimed by appellant that the corn, although cultivated and raised by the wife and the children whilst separated from the husband, belongs to him and is liable for his debts, and that the mule is also liable, as it came from a mare owned by the husband. On the other hand, it is contended that the corn belongs to the wife under the provisions of the act of 1869, and that as the earnings of the wife paid for the horse that was exchanged for the mare that produced the mule, it also belongs to her.

The act of 1869 declares that a married woman shall be entitled to receive and possess her own earnings and sue for

the same in her own name, free from the interference of her husband and his creditors, but it provides that she shall have no compensation for labor performed by her minor children or husband.

Under this enactment, we can entertain no doubt that where the husband deserts his wife and children, that all of her earnings, together with those of the children, are free from liability to be subjected to the debts of the husband. When he abandons them, he at the same time abandons all claim to their labor and their earnings. The act of 1869 was manifestly intended to embrace such a case. After such an abandonment, it can not be said that the wife continues to labor for him; and in supporting and caring for the minor children, she must be held entitled to their earnings. And whether a husband has abandoned his family, is a question that must be determined by a jury from all of the evidence; and it must appear that there is a real and not a pretended abandonment, to authorize the wife to hold the property produced by the labor of the wife and the minor children. If it is only apparent or collusive simply to protect property from execution, then the accumulations from the labor would belong to the husband.

At the common law, the earnings of the wife belonged absolutely to the husband; and the same rule, under the act of 1869, applies where the labor is performed for the husband or is bestowed on his business, or in acquiring the products of his business or calling. But where the labor is for another person, with the assent of the husband, then she becomes, under the statute, absolutely entitled to receive and hold the earnings from such labor, whether it be in property or money. If, with the assent of the husband, the wife were to carry on any kind of business, she would be entitled to the profits, if it was *bona fide* hers, and not intended to shield the husband's property from his creditors. So, no reason is perceived why a husband might not, if the transaction were not tainted with fraud, permit his wife to raise and sell grain, stock and other

16—64TH ILL

farm products, and receive the profits. But in such case, the transaction would have to be fair and free from fraud as to creditors. To be effective, the act of 1869 seems to require this construction.

But the earnings of the wife prior to 1869, at least, belonged to the husband; and where they were converted into a horse, it became the property of the husband. It was paid for with the means of the husband, and could only be his. And where the horse was exchanged for the mare, it was paid for with property belonging to the husband, and the property thus acquired became his. Nor could the husband donate the horse or the mare to the wife, so as to vest her with title. At the common law, the husband and wife were incapable of entering into contracts or agreements; could neither buy from nor sell to each other, nor make a valid gift, except through the interposition of a trustee. The act of 1861, whilst enabling the wife to acquire and hold property independent of the husband, prohibits her from receiving and holding property from her husband. The husband in this case could not make a valid gift of the horse or mare to his wife, so as to protect it from his creditors.

It seems to be a general rule that the offspring of all animals, as well as the growth and increase of property, follows the ownership of the property itself. Hence, unless there be some agreement to the contrary, the increase of all domestic animals belong to the owner of the dam. Hence it follows that the mule belonged to the husband, who is shown to have been the owner of its dam; and he being the owner, it was liable to be seized and sold under execution for the payment of his debts, unless exempt under the law allowing one horse, not exceeding in value $100, to be exempt to the head of the family when residing with the same. But we are unable to find in the evidence that the mule was claimed as exempt from sale under execution; nor does it appear that there were not other horses belonging to the defendant in execution that were claimed as exempt. To be availing, the property must

be claimed under the statute ; whilst in this case we can not see that any such claim of the mule was made, except by the instruction, which had no evidence upon which it could be based, and it was error to give it. The case was tried on the theory that the mule belonged to appellee, and not that it was exempt from sale on execution. All instructions given which contravene the rules we have announced in this opinion, were erroneous, and should not have been given, and those refused which accord with the rule here announced should have been given. But inasmuch as the evidence fails to support the verdict as to the ownership of the mule, and the jury were misdirected, the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT, dissenting:

I am of opinion that the property in controversy belonged to the appellee, and that the judgment of the circuit court should be affirmed.