THE CORN EXCHANGE BANK v. W. J. APPLEGATE *et al.*; H. M. WAYCOFF, Intervener, Appellant.

| | |
|---|---|
| 91 | 411 |
| s97 | 69 |
| 91 | 411 |
| s107 | 315 |
| 91 | 411 |
| 115 | 473 |
| 91 | 411 |
| 120 | 734 |
| 91 | 411 |
| 124 | 598 |
| 91 | 411 |
| i129 | 396 |

Setting Aside Fraudulent Conveyance: Judgment Not Obtained: NONRESIDENT DEBTORS. An action is brought to subject a *nonresident* debtor's land to his debts, before any judgment is obtained against him, but one is gotten pending action—a resident intervenes. *Held,* the action to subject may be maintained against intervener.

Facts Held Sufficient to Show Fraud in case of conveyance between relatives, conveying a large sum and made while grantor did not have the legal title and without conference with holder of such title.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

FRIDAY, May 25, 1894.

ACTION to subject real estate to the payment of a judgment. Decree for plaintiff, and the intervener appealed.—*Affirmed.*

*H. G. Curtis* for appellant.

*Phelps & Temple* for appellee.

GRANGER, C. J.—1. The defendants are W. J. Applegate and G. W. Barber. Defendant Applegate is a judgment debtor of the plaintiff, and both plaintiff and defendant are residents of Chicago, Ill. On the fourteenth day of April, 1890, Applegate was the owner of eighty acres of land in Cass county, Iowa, and two lots in the city of Atlantic, and on that day, he conveyed them to defendant Barber. This action is brought to set aside the conveyance to Barber, as fraudulent, and to subject the lands to the payment of the judgment against Applegate. The action in which the judgment against Applegate was obtained, was commenced on the fourth day of April, 1891, and was aided by attachment, which was on the same day levied on the lands in question. This action to subject the land to the attachment proceeding was commenced on the same day. The decree in this case was entered January 27, 1893. A judgment against the property was entered in the attachment suit in September, 1891; and that fact was, by way of amendment, pleaded in this suit before the final submission of the cause. Defendant Applegate answered in this suit, denying any interest in the lands, and averring that he had conveyed them to H. M. Wyckoff, who is the intervener herein, and he shows that the lands were conveyed to him on the

second day of April, 1891, and before the commencement of the attachment suit. Plaintiff, answering the petition of intervention, shows that the conveyance to intervener is fraudulent as to creditors.

II. The issues, practically, are between plaintiff and the intervener, who is the appellant. It will be noticed that when this suit was commenced, there was no judgment against Applegate, and it is urged that because of that fact the petition must be dismissed; and the case of *Clark v. Raymond*, 84 Iowa, 251, 50 N. W. Rep. 1068, is cited in support of the claim. It is true that that case, speaking of a creditor's bill, states, "It is a general rule that such a bill can not be maintained until judgment has been obtained in the principal action." But nothing more than a general rule is stated, and the rule is cited with reference to facts and issues widely different from this case. In this case, before its final submission, the judgment in the law action was pleaded, and the decree, when entered, made specific reference to it. The issue in the case of *Clark v. Raymond*, was as to the appointment of a receiver pending the litigation, before judgment. But, however that may be, this case forms an exception to the general rule, because the debtors are nonresidents of the state. The case of *Taylor v. Branscombe*, 74 Iowa, 534, 38 N. W. Rep. 400, is one, on principle, quite like this, and it is there said: "It has been held that a creditor's bill may be maintained without judgment or attachment, in case the debtor is a nonresident, as were the defendants in this case." The defendants and the debtor in the case at bar are also nonresidents. Our consideration of this question is to be understood without reference to Code, section 3150, as the case has been tried and submitted without reference to it, probably, with a mutual understanding that it has no application. The intervener is a resident of the state, but he injects his claim for

adjudication into the case against the defendants, and in doing so he invites an adjudication thereof. The defendants do not appeal, and the judgment, as to them, is conclusive. Appellant is in no position to urge a claim that the suit can not be maintained. He has himself, in so far as his rights are involved, instituted the proceeding.

III.   The intervener is a prosperous farmer in Cass county, and evidently a man of considerable means. He is uncle to the defendant Applegate, who resides in Chicago. The lands in question are worth something more than eight thousand dollars. Applegate, as well as the firm of which he is a member, was insolvent. In April, 1880, he conveyed the lands to Barber, who, as a witness, says the conveyance was as security for some two thousand dollars which Applegate was owing him; and he also was a guarantor for Applegate for some two thousand dollars, as to which the conveyance was also security. As he states, the indebtedness to him was paid, and he was released from liability as guarantor, and he then reconveyed the property to Applegate. This reconveyance was signed April 6, 1891. There is considerable to cast suspicion over the transaction between Applegate and Barber; but, without a finding of fraud as to that transaction, we think it quite clearly appears that the transfer from Applegate to Wyckoff is fraudulent. If he did in good faith purchase the land, we are warranted in saying that he took the deed from Applegate, and gave to him eight thousand and six hundred dollars in money. When he did this, Applegate had no legal title to the land; the title then being in Barber, who was a stranger to appellant. The transaction took place in Chicago, where Barber was known to be; and without any attempt at a conference with him, to know if he claimed the title, or would convey to him, or in his interest, so as to perfect his title, he completes a trans-

action of great importance in a way that no man of ordinary care and prudence would. While he is related to Applegate, no reasons appear why he should repose especial confidence in his word, as to obtaining a conveyance from Barber; and even if there were such reasons, as to Applegate, he was in absolute ignorance as to what Barber could or would do. Intervener is a man of affairs, and the instances are few, if any, where such men part with large sums. of money upon such uncertainties, when the means by which they may be avoided are within easy reach; and when it does occur, and the result is to the prejudice of others, the transaction is open to grave suspicion. Intervener was a witness called by plaintiff, and the examination discloses a manifest purpose to show that at the time of the transaction he had not the ready money to make such a purchase. The examination led to something of a disclosure of his assessments, his book accounts, and his sales of stock. Plaintiff seems to have intentionally avoided questions to him as to how he actually made the payment, evidently because it had called him as its witness; but it succeeded in casting about the transaction such suspicions that we think the intervener would, if the charge of fraud was not true, have taken the witness stand, and stated the facts as he knew them to be. Natural promptings would indicate such a course, and especially so where large interests are at stake. The sale was made when Applegate was insolvent, when he was being pressed for payment, and on the eve of commencement of the suits to enforce collection. The facts, if not shown to intervener before, were known to him at the trial; and their significance, under the charge of fraud against him, was manifest. In view of them he elects to submit his case alone upon the proofs against him, rather than upon a full disclosure of the facts, as known to him. It is true that fraud is not to be presumed, but proven. We think, how-

ever, that the testimony submitted is to be read and understood in the light of the neglect of the intervener to explain that which militates against him, and which he naturally would explain if the effect claimed for it were not true. *Glenn v. Glenn*, 17 Iowa, 498, is a case involving a fraudulent transfer of land, and it is said: "Another consideration of much weight is that notwithstanding the circumstances thus attending the transfers in question seem to require explanation, if any could be given, yet neither the father, nor any of the sons, or the son-in-law, have become witnesses. If they could truthfully have testified to the facts showing the *bona fides* of the conveyance in question, the reasonable presumption is that, being competent witnesses, they would have done so. Where the circumstances are so suspicious as those above specified, the failure of the plaintiffs to offer explanatory or rebutting evidence thus clearly within their power, had it existed, makes strongly against them." The conclusion that the transaction is fraudulent is supported even upon the theory that, after the presentation of the deed by intervener, the burden is upon the plaintiff to show the fraud, which point we do not find it necessary to consider. The judgment below is AFFIRMED.