FIRST NATIONAL BANK OF WILMOT, MINNESOTA, Appellant, v. A. EICHMEIER and KATIE EICHMEIER.

**Appeal:** DELAY IN FILING ABSTRACT. Delay in filing an amendment to an abstract, not the fault of appellee and from which no prejudice results, will not be stricken because of the delay.

**Same:** SERVICE OF NOTICE: RECORD EVIDENCE. The recital in a judgment that a party appeared to the action by counsel and in person is conclusive that notice of appeal was served upon such party, as against the denial, unsupported by affidavit, that the counsel acknowledging service of notice of appeal was not such counsel.

**Same:** AMENDMENT OF ABSTRACT: WAIVER OF DEFECTS IN RECORD. In filing an amendment to the abstract the appellee does not waive objections to alleged defects in the preservation of the record, but he may amend subject to the ruling on the denial that the evidence was ever filed or properly certified.

**Same:** ESTABLISHMENT OF THE RECORD. The court has authority to establish the record of a cause as it originally existed at any time: Thus where the certificate attached to the shorthand report was inadvertently removed and a substituted certificate, neither entitled, dated nor signed by the reporter was attached, the appellant was entitled to a correction of the certificate in accordance with the original, although more than a year had elapsed since entry of the judgment.

**Same:** SUFFICIENCY OF RECORD. The evidence on the motion in this case to establish the original certificate attached by the official reporter is held to support a finding that the original certificate was detached by the reporter and inadvertently replaced by a defective one.

**Fraudulent conveyances:** CREDITORS' SUITS: RELIEF. It is not necessary in a creditor's suit against nonresident defendants to set aside a conveyance that the claim be first reduced to judgment, but demand for judgment and to subject the land fraudulently conveyed may be made in the same action.

**Same:** FRAUD: KNOWLEDGE OF GRANTOR'S INTENT: EFFECT. Although a creditor may know that his grantor's conveyance to him was with intent to hinder and delay other creditors, still he may acquire good title if taken in good faith on his part and in satisfaction of a valid indebtedness due him.

**Same:** HUSBAND AND WIFE: CONVEYANCE OF HOMESTEAD: CONSENT OF WIFE. A wife is not bound to consent to a conveyance of the homestead, but as a condition precedent to her assent she may require that the transfer of property for which it is exchanged be made to her. And while transactions between husband and wife which have the effect of delaying creditors will be carefully scrutinized still she has the same rights as a vigilant creditor of her husband that others have, and if actuated only by a design to collect what is due her she is not subject to criticism.

**Same:** TRANSACTIONS BETWEEN HUSBAND AND WIFE: REPAYMENT OF LOANS: REASONABLE TIME. A husband may repay money borrowed in good faith from his wife, and where no definite time for repayment is agreed upon his obligation is to pay within a reasonable time. Evidence held to show that the transactions in question were not fraudulent as to the husband's creditors.

**Domestic animals:** OWNERSHIP OF INCREASE. In the absence of an agreement to the contrary the increase of domestic animals belong to the owners of the dams.

*Appeal from Franklin District Court.*—Hon. Chas. E. Albrook, Judge.

Monday, November 20, 1911.

Suit to subject certain land to the payment of the indebtedness of A. Eichmeier. The petition was dismissed. Plaintiff appeals. Affirmed on the merits, and order denying application to correct record *reversed.*

*Stipp & Perry* and *David Evans,* for appellant.

*John M. Hemingway* and *A. J. Daley,* for appellees.

Ladd, J.—Shortly after the death of Herman Eich-

meier, the defendant, A. Eichmeier, a son, conveyed his one-eighth interest in four hundred acres of land, in Franklin county, left by deceased and subject to the life estate of the widow, if she take under the will, or, if she refuse, then to her dower therein, to Maud E. Daley. She immediately deeded the same to the defendant, Katie Eichmeier, wife of A. Eichmeier. At that time, the latter was largely. indebted to the First National Bank of Wilmot, Minn., and to the Adrian State Bank of the same state, and in this suit it is sought to establish a portion of the indebtedness against the debtor, and subject the property conveyed to its payment. Several preliminary matters may be disposed of before considering the merits of the controversy.

I.   The appellee filed an amendment to the abstract, asserting that the abstract did not completely and faithfully reproduce the record, denying that it contained all the evidence essential to a proper understanding of the case, and saying that appellee, Katie Eichmeier, "to correct the said errors amends said abstract to show the facts in accordance with the truth and the record in the following particulars." Here follow several corrections of the pleadings and amendments to the evidence of several witnesses as abstracted. It then denies that notice of appeal was ever served on defendant, A Eichmeier, says that the abstract and amendment thereto do not contain all the evidence, and "especially states and shows that the testimony taken and offered during the trial of the case was never properly certified or properly made a matter of record, and denies that the evidence is preserved as by law required," and asserts that the certificate attached to the shorthand notes of the official reporter was never dated, entitled, or signed by him, and that the transcript of the evidence was not filed within six months after the entry of judgment.

Appellant moves that this amendment be stricken, because filed too late, and, subject to ruling thereon, that

the portion thereof denying the service of the notice of appeal and preservation of the evidence as of record be stricken. The delay in filing the amendment was due to no fault on the part of appellee, and as no prejudice resulted therefrom, it ought not to be stricken.

1. APPEAL: delay in filing abstract.

It appears that the notice of appeal was directed to both defendants, and service thereof was acknowledged by local counsel for Katie Eichmeier, as "attorney for defendants." Though A. Eichmeier did not answer, the judgment entry recited that "defendant, A. Eichmeier, having appeared at such hearing, both by counsel and in person," a personal judgment for $4,527.20 was entered against him. As against the mere denial, unsupported by affidavit or otherwise, that counsel acknowledging service was attorney for A. Eichmeier, the record must be regarded as conclusive to the contrary, and the service regarded as sufficient.

2. SAME: service of notice: record evidence.

Nor do we think the circumstances that appellee filed an amendment to the abstract, "to show the facts according to the truth and the record," estop her from denying therein that the evidence was ever properly preserved as a part of the record. A party is not required to waive the contention that the evidence has been duly certified, in order to amend the abstract, or *vice versa*, but may both amend and deny, and, if the latter is unavailing, enjoy the advantage of having the omitted testimony before the court. True, something to the contrary was said in *Connors v. Railway*, 74 Iowa, 383, but taken back in *Hershey v. Nyenhuis*, 103 Iowa, 195. In *Sarvis v. Caster*, 116 Iowa, 707, the amendment to the abstract asserted that "the following amendments are a part of the record," and it was said that if a part of the record the evidence set out could only become such by timely certification. In *Doyle v. Duckworth*, 149 Iowa, 623, the decisions are reviewed, and therefrom it

3. SAME: amendment of abstract: waiver of defects in record.

plainly appears that in amending the abstract appellee does not waive objections to defects in the alleged preservation of the record, but may amend, subject to the ruling on a denial that the evidence has ever been filed or properly certified. The motion is overruled.

II. The transcript was not filed within six months after the entry of judgment, and appellee moves that the evidence be stricken from the abstract, for that the certificate attached to the report of the trial in shorthand, headed "In the district court in and for Story county," was neither entitled nor dated, and, though signed by the trial judge, was never signed by the official reporter. This appearing to be true, appellant moved that the certificates be amended by (1) inserting November 23, 1909, as the date thereof; (2) by adding to the reporter's certificate the name of the official reporter, who took the evidence down in shorthand; and (3) that said certificates be amended so as to conform to those attached to the transcript, and purporting to be copies of certificates to the shorthand notes. This was on the ground that the reporter, after preparing the transcript, had inadvertently substituted the certificates now attached thereto for those so attached at the time the notes were filed with the clerk of the district court. Subsequently the motion was amended, so as to pray that an order be entered, finding that the shorthand notes were duly certified when filed on November 23, 1909. The defendant, Katie Eichmeier, moved to dismiss the motion because filed more than a year after the entry of judgment, and otherwise resisted it. The cause was redocketed, and hearing had, at the conclusion of which the application to correct the record was denied. An appeal from the ruling was taken, and, aside from the contention that the application was not timely, presents an issue of fact only. As this is not a proceeding to correct any error or omission of the clerk, or irregularity in obtaining judgment, section 4093 of the

4. Same: establishment of the record.

Code has no application.  The amendment of a defective record is not sought, but the establishment of the record as it originally existed.  This the court in a proper case may do at any time.  19 Am. & Eng. Ency. of Law (2d ed.), 556.

Were the shorthand notes properly certified when filed, November 23, 1909 ?  No one, save the reporter, appears to have examined them before their return to the clerk of court after the preparation of the 5. SAME: sufficiency of record. transcript.  At that time, as previously stated, the printed certificate forms for Story county, without blanks filled, save the signature of the judge, were attached to said notes, but to the transcript thereof were attached what purported to be copies of the certificates, signed by trial judge and official reporter, bearing date November 23, 1909, with blanks filled and headed "In the district court in and for Franklin county," and a certificate of the reporter that these were exact copies of the certificates attached to the shorthand notes.

The reporter testified that, "After or during the time I made this transcript I looked to see whether the certificate was attached to the shorthand notes.  There was a certificate attached.  I made a copy thereof.  I attached the copy to the certificate which I made here (referring to transcript).  The copy is made on a blank attached to the transcript."  He then explained that by "certificate" he meant those of the reporter and judge, printed on a single sheet of paper, and with blanks filled by typewriter, and proceeded:  "I made the translation of these shorthand notes in Ames, at my home, in my room, which I call my den or office.  I personally transcribed the shorthand notes.  What I did in this particular case was as follows:  I have a table somewhat larger than that (pointing), and lower, and during the summer time I prepare myself, as it were, for a sort of summer's campaign of work, and I take my shorthand notes and lay them face down in a box.  I

usually use a typewriter paper box, and then I take out this brad here (indicating), and as fast as a sheet is completed I lay it in the box, or lay it back over the box, over the other way, and so on; and when the case is completed I put the notes together again. I reassemble the pages. Then I open my closet, where I have a shelf, and throw it up there and proceed with the next case. Each case takes its turn in that way. It is my recollection that in this case I separated the pages of the shorthand notes."

He testified further that he carried printed blank forms, headed "In the district court in and for Story county," in his grip with him to the several counties, and sometimes scratched out "Story" and inserted the name of the county where the action was being tried, and used these blanks; that the clerk of the district court of Franklin county kept printed certificates suitable for that county; that he had left the notes on the shelf, called for by defendant's counsel, and subsequently returned them to the clerk; that he had Story county blanks in his office at Ames, and also had had blanks signed by the trial judge; and continued: "I remember of making a copy of those— a copy of the certificate which is now attached to the transcript. That is my recollection of the matter. There was nothing in the certificate to the shorthand notes that struck me as being out of the way or unusual. It was my intention at that time to make a true copy of this certificate. I have searched everywhere, and have not found it."

On cross-examination, the witness testified that he was not basing his testimony on custom, rather than recollection; that several circumstances (naming them) had caused him to remember the case; that in filling out the blanks in the printed certificate forms he could have done so without referring to the certificates attached to the shorthand notes. "When I transcribed the shorthand notes, I unfastened them and took out the fasteners. As I transcribe each page, I put them front side down in a box which I

have for that purpose. I don't copy all of the outside cover page. It is the intention to lay this cover down in the box. That is the first paper I lay down. It is then my intention, after I have transcribed the first page, to lay them in the box with its face down, so that they will come in the same way as they were before they were separated. At the time that I come to the certificate which is attached, I don't transcribe that. I get a blank, which is similar in form, and fix it up like the one attached to the shorthand notes. I don't write it out. It is my intention to lay the certificate in the box the same as the rest of it after I get it done. I am certain that I did that in this case." He testified further that he had carried blank certificates, signed by the judge, to be filled out and attached to reports of trials as they occurred. "I would not say it was not possible for me, in my house, to attach them without signing them. I would not say anything is not possible. Q. Now, then, you are willing to concede that it was possible to attach the certificate without signing it? Mr. Perry: Objected to as being argumentative and asking for a conclusion of the witness. A. I am not, in its present form. I don't base my answer simply upon the fact of having attached this filled out blank to my transcript of the shorthand notes. The form itself disputes the proposition. That is why it is, and then my recollection of the matter. The form of the certificate as it appears there disputes the proposition, and according to my recollection. The printing is there all right; but that is all there is to it. I don't think it is very likely for me to have omitted my signature, or omitted to do anything to that form. Q. Would you not think it at all probable that you would attach a certificate to the shorthand notes, when you returned them to the clerk, such as you now find attached? A. I never saw this certificate at all. I must have put it there, or it would not have been there. I presume I must have put it there."

Redirect examination by E. D. Perry, Esq.: "This duplicate copy of the judge's and reporter's certificate to the shorthand notes was not made by me from memory. It was made by me with the other certificate before me. That is my recollection. I would not make one of those from memory. When the shorthand notes are filed, I always put a blank page on the back side to protect the certificate. That is why that is there."

Such is the evidence on which the order denying the application to correct the record was based.

It is evident that the certificates originally attached to the shorthand notes were detached therefrom by the reporter in getting ready to make the transcript. Did he replace them, or inadvertently attach those now fastened thereto, instead of those originally there? The latter conclusion seems to us the more reasonable, and as it is the more consistent with official probity, and sustained by the evidence, we think this should have been the finding of the district court. Otherwise the reporter must be held not only to have inadvertently or purposely omitted to fill out and sign the certificates attached to the shorthand notes, but negligently or intentionally to have falsely certified to the correctness of the copies attached to the transcript, and thereby have foisted a false record on the court. With printed blanks in his office, to which resort had been made for blanks on which to prepare the copies attached to the transcript, he might have inadvertently picked up one of these and fastened it to the shorthand notes, instead of the originals. Of course, there is no direct evidence of this, for had he known, the mistake would have been obviated. But circumstances proven in connection with the copies attached to the transcript warrant this inference, and we prefer to adopt this view, rather than another, inconsistent with official probity, and convicting an officer of the court, apparently worthy of confidence, of having negligently or intentionally made a false certificate, and thereby a spurious

record.   It ought not to be assumed that this reporter is
unworthy of confidence.   His integrity is not questioned
by counsel, and, though he may have been influenced in
his account of the transaction somewhat by what had been
his custom, he testified with apparent candor, and his evi-
dence ought not to have been rejected.   The order is re-
versed, and the record will be treated as corrected, so as
to show the shorthand notes to have been duly certified.

III.   The claims of plaintiff had not been reduced to
judgment prior to beginning this suit.   As defendants were
nonresidents, this was unnecessary.   Relief in the way of
6. Fraudulent   judgment against the debtor, and subjecting
conveyances:    the land in the wife's name, was rightly
creditors suits:
relief.         sought in the same action.   *Taylor v. Brans-
combe,* 74 Iowa, 534; *Com. Exchange Bank v. Applegate,*
91 Iowa, 411.

For the purpose of this case, it may be assumed that
A. Eichmeier was insolvent when his interest in his father's
estate was transferred to his wife.   The evidence quite
7. Same: fraud:   satisfactorily indicates that therein he acted
knowledge of      with the design to hinder and delay, if not
grantors in-
tent: effect.     defraud, his creditors.   No consideration
passed upon the conveyance to Maud E. Daley, or from the
latter to Katie Eichmeier; but it is contended that, even
though the husband was actuated by an improper motive,
his wife acquired the property in good faith, and for the
sole purpose of satisfying a long-standing indebtedness
owing her by her husband.   Undoubtedly she was aware
that he was largely indebted to the banks mentioned, but
there is no direct evidence that she knew of her husband's
design in causing the transfer of the property to her.   But
if she did know of his motive she had the right to collect
her own claim and insist upon its satisfaction by the con-
veyance of the property, provided she did so in good faith,
and not for the purpose of assisting him.   *Muir v. Miller,*
103 Iowa, 127.   According to her testimony, as well as

that of her husband, he had promised to convey his interest in his father's estate many years previous, in the event he did not sooner repay her for the money borrowed, and if such indebtedness was valid, the evidence was such that the trial court might have concluded that she acted in good faith. True, she knew that he had turned over to his father, shortly before, enough property to discharge $12,000 of indebtedness to him, but there is no suggestion that this was not valid.

She had taken the deed of a house and lot in Adrian as their homestead in her name, but this was in lieu of a homestead interest in land conveyed, and for which the town property was received in part payment. If she refused to join in the deed conveying the land, unless the house and lot in Adrian were taken in her own name, she acted entirely within her right, as she was not bound to consent to the change, unless she chose to do so. *Garner v. Fry,* 104 Iowa, 515. The transaction furnished no cause of complaint by creditors. She had not mentioned the alleged indebtedness of her husband to her at any time when the cashier of the plaintiff or the cashier of the Adrian State Bank had importuned her to secure the husband's indebtedness to the banks by mortgaging the homestead, but, as she was not claiming the homestead as having been acquired in payment of what he owed, there was no occasion for doing so, and possibly, in view of subsequent events, it was the part of wisdom not to take them into her confidence. She had read a letter from plaintiff's cashier, threatening to attach, unless security were given, four days previous to the execution of the deeds, and if there was haste thereafter in procuring the satisfaction of her claim against her husband this was but an evidence of business sagacity. Undoubtedly the transactions between husband and wife, which have the effect of depriving his creditors of collecting their claims from his property, should be

8. SAME: husband and wife. conveyance of homestead: consent of wife.

looked upon with suspicion and carefully scrutinized, but if it appears, in collecting her claim and receiving his property in satisfaction thereof, she has merely followed the tactics usually pursued by the vigilant creditor, actuated by the design only of collecting what is due her, she is not to be criticised therefor. If, then, her claim was valid, and substantially equal to the value of the property acquired, the finding of the trial court ought not to be disturbed.

Prior to her marriage with Eichmeier, when but nineteen years of age, she had exacted from him, then barely having attained majority, the execution of an antenuptial contract in words following: "For value received I, August Eichmeier, hereby sell and transfer to Katie Phillips on condition that she marry me within (6) six months from this date, all the following described personal property, to wit: One top buggy now owned by me; one Deere riding corn plow; one Avery walking corn plow; one three-section Deere harrow; one Union corn planter and check-row attachment; one pair Ackley bobsleds; two sets double harness, white trimmed; one black horse, colt of spring of 1893, white star in face; one roan mare four years old, gray mare three years old; one dark·iron gray mare three years old; to have and to hold the aforesaid chattels forever on the condition before mentioned. Dated August 28, 1893. August Eichmeier." This is said to have been in the handwriting of Daniel Eiler, Esq., except that "one roan mare four years old, gray mare three years old," was inserted by her, with the consent of August, for that he had forgotten. By this instrument he promised to give all he had, save his share of a crop raised on a leased farm, and she took him at the price stipulated in October following. After consummating the bargain, she consented that he might use the machinery and stock with which to earn a livelihood. According to her testimony, she had $45

9. Same: transactions between husband and wife: repayment of loans: reasonable time.

when married, and received $18.50 as a wedding gift. Shortly thereafter, he borrowed $40 of this, on a promise to pay it back some time. Her mother and mother-in-law gave her poultry of several kinds, numbering twenty-two; and it was agreed that she was to have the money received for poultry and fruit sold from the farm. August borrowed some of this from her on the same promise. They had the same agreement concerning money received by her from boarding the school teacher and others, and he obtained part of this in the same way. The mares enumerated in the antenuptial contract raised eleven colts, and these, together with the mares, were disposed of by August with the promise to repay his wife. Though no accounts were kept or notes given, she testified to the several items, said to have been borrowed by him to use in his business, specifically, and that he had promised to pay the same, with interest thereon. That no definite time of repayment was fixed did not impair his obligation to repay within a reasonable time. *Mahaska v. Whitsel,* 133 Iowa, 335; *Sprague v. Benson,* 101 Iowa, 678.

It will be observed that August did not collect the money for board or chickens sold, and the like, and after using it for the family, promise to repay. See *Hanson v. Manley,* 72 Iowa, 48; *Hamil v. Henry,* 69 Iowa, 752. His wife collected the money, under the express understanding that it was to belong to her, and thereafter made a loan to him upon his promise some time to return it. He had the right to give her the money, if he chose, not being then indebted; and if he thereafter borrowed it of her we see no reason why he should not repay the same, as though promised by anyone else. This was the holding in *Daggett v. Bulfer,* 82 Iowa, 101, where the husband had paid the wife for services rendered. It must be conceded, however, that there is some ground to distrust somewhat the testimony concerning the items mentioned, other than the proceeds of the mares and colts. All the moneys received were

acquired in connection with his property and in the management of the family affairs. They had three children and the story that she, instead of using the moneys in meeting family expenses, or allowing him to have the same for that purpose, loaned it to him to be used in his business is one which might very easily be manufactured.

But the antenuptial contract and her subsequent marriage gave her full ownership of the three mares enumerated therein, and the rule is well settled that, in the absence of any stipulations to the contrary, the offspring of domestic animals belong to the owner of the dams. *White v. Storms,* 21 Mo. App. 288; *Hazel Baker v. Goodfellow,* 64 Ill. 238; *Leavitt v. Jones,* 54 Vt. 423 (41 Am. Rep. 849). See *Rogers v. Highland,* 69 Iowa, 504; *Demers v. Graham,* 36 Mont. 402 (93 Pac. 268, 14 L. R. A. (N. S.) 431, 122 Am. St. Rep. 384); *Maize v. Bowman,* 93 Ky. 205 (19 S. W. 589, 17 L. R. A. 81). It affirmatively appears that Mrs. Eichmeier had in no way parted with the right to the increase, and she was entitled to the proceeds, not only of the mares, but of the colts raised, when sold. The indebtedness therefore is not disputed. Further it appears that after she acquired the house and lot in town she permitted him to remove the barn therefrom, for the purpose of transforming it into a livery stable, that he did so under the express agreement to pay her therefor, that she expended about $400 in the repair thereof, and that he promised to pay her $1,400 for it. It may be that the price fixed was excessive. Possibly she was driving a hard bargain again; but the testimony concerning the transaction is not controverted in any way.

While some of the items recounted may be of doubtful propriety, there is enough, beyond question, with interest computed thereon, to considerably exceed the value of the estate conveyed, and this accounts for the settlement without accurately determining the amount of the husband's in-

10. DOMESTIC ANIMALS: ownership of increase.

debtedness to her. The record is such as to preclude interference with the finding of the trial court that the conveyances were not fraudulent.

On appeal from an order denying the application to correct the record, *reversed.* On the merits, *affirmed.*