J. M. SHEA, Appellee, v. J. C. KEITH et al., Appellants.

**APPEAL AND ERROR:** Waiver of Appeal—Filing Contingent Claim
1  **in Bankruptcy.** The right of a creditor of a bankrupt to maintain an appeal from a decree holding fraudulent a transfer of property to him by the bankrupt in payment of the claim is not waived by the act of the creditor in filing in the bankruptcy proceedings a claim contingent upon the outcome of the appeal.

**FRAUDULENT CONVEYANCES:** Preference to Creditors—Effect.
2  The fact that a transfer of property by an insolvent to one of his

creditors will work a preference in favor of that particular creditor does not, in and of itself, invalidate the transfer.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Effect. The
3   law will not presume fraud from the fact that a conveyance was
from an insolvent son to his father.

Headnote 1:   3 C. J. p. 686.   Headnote 2:   27 C. J. p. 613.   Headnote
3:   27 C. J. p. 647.

*Appeal from Audubon District Court.*—TOM C. WHITMORE,
Judge.

JUNE 25, 1925.

SUIT in equity, to set aside transfers of personal property for alleged fraud, and to subject the property to the satisfaction of a judgment. Material facts appear in the opinion. From decree in favor of plaintiff, defendants appeal.—*Reversed.*

*Mantz & White* and *J. A. Graham,* for appellants.

*Swan, Clovis, Swan & Martin,* for appellee.

ARTHUR, J. —I.   In December, 1922, appellant J. C. Keith was adjudged a bankrupt. This cause was tried in May, 1923, and taken under advisement, and decree rendered December 11, 1923. In November, 1923, after the cause was tried, and before decree was entered, P. J. Keith and Mabel Keith filed, in the matter of the bankruptcy of J. C. Keith, claims based on the notes involved in this cause. Appellee moves to dismiss this appeal, for the reason that, by filing said claims in the bankruptcy proceedings, appellants have waived their rights in the property involved in this cause, and that there exists no right to prosecute this appeal. Contained in the motion also are other matters pertaining to practice. The motion is not well taken, and is overruled. Mabel Keith is a stranger to this suit. The claim of P. J. Keith recites that it was filed as a contingent claim, to protect himself in the event the transfers of property involved in this cause should be set aside and the property turned over

1. APPEAL AND ERROR: waiver of appeal: filing contingent claim in bankruptcy.

to the trustee in bankruptcy. Also, motions by appellants to strike amendment to abstract and reply argument are overruled.

II. On November 18, 1921, William Deets commenced an action to foreclose a mortgage against J. C. Keith and others upon certain lands in Audubon County. On December 11, 1921, J. C. Keith transferred, by bill of sale, to P. J. Keith, his father, his one-half interest in a stock of merchandise in a store in the town of Audubon, operated under the firm name of Keith & Hansen. The bill of sale was recorded on December 13, 1921. On December 28, 1921, J. C. Keith transferred, by bill of sale, to P. J. Keith a Ford sedan. On February 23, 1922, Deets recovered personal judgment against J. C. Keith and Rose E. Keith, his wife, in the district court of Audubon County, in the above mentioned foreclosure suit, for $8,465 and costs and attorney fees. On April 7, 1922, the land covered by mortgage in the foreclosure action was sold under special execution to Deets, leaving a deficiency judgment against J. C. Keith in the amount of $8,379.88. On December 15, 1922, J. C. Keith was adjudged a bankrupt in the Federal district court for the southern district of Iowa, western division, and J. M. Shea was chosen trustee of the assets. On March 7, 1923, this action was begun by Deets, to set aside the transfer of the above mentioned grocery stock and the Ford automobile by J. C. Keith to P. J. Keith. Later, J. M. Shea, trustee in the matter of the bankruptcy of J. C. Keith, was substituted as plaintiff.

The petition alleged that the transfers were without consideration, and made for the purpose and with the intent of defrauding Deets and hindering and delaying him in the collection of his judgment against said J. C. Keith. The answer averred that the interest in the stock of merchandise and the automobile were sold by J. C. Keith to P. J. Keith, and that the transfers were made in good faith and for valuable consideration, and expressly denied that said transfers were made for the purpose of hindering, delaying, or defrauding any of the creditors of J. C. Keith.

Under these issues, the cause was tried on May 4, 1923. Decree was entered in favor of plaintiff on December 11, 1923, from which this appeal is taken.

III. The case involves questions of fact. There can be little or no dispute as to the application of the law. The evidence, other than as to identification of exhibits and the exhibits themselves, consists of the testimony of J. C. Keith and P. J. Keith, appellants, and Mabel Keith and P. L. Hansen, who were not parties to the action. These witnesses were called by plaintiff, appellee.

The evidence shows, without dispute, that the store where the stock of merchandise in controversy was located, had been in operation for many years prior to 1917. For some years prior to 1917, the store was owned and operated by one Hans Johnson, and J. C. Keith had been employed as a clerk in the store. In the spring of 1917, J. C. Keith and P. L. Hansen purchased the stock of merchandise in the store from Hans Johnson, each buying a one-half interest therein. J. C. Keith had no funds of his own, and in order to raise money with which to buy his one-half interest, borrowed $3,000 from his aunt, Mabel Keith, and gave to her his note, with P. J. Keith, his father, as surety, and borrowed, at that time, money from P. J. Keith for the same purpose, for which he gave his note in the amount of $1,775. Later, from time to time, P. J. Keith advanced to his son money for use in the business, for which, on September 3, 1920, J. C. Keith gave P. J. Keith his note for $1,025, making $2,800 which the father furnished the son which was used in the purchase and conduct of the business, and $3,000 for which he was surety. The store was operated by J. C. Keith and P. L. Hansen until in December, 1921. In November, 1921, William Deets commenced the action before mentioned, against J. C. Keith, to foreclose a mortgage on 160 acres of land in Audubon County, and demanded personal judgment against J. C. Keith. P. J. Keith testified that his son did not tell him about the suit begun by Deets; that he learned it through the newspapers; that, upon receiving such information, he went to his son and said to him, "I want some more security for the money that you have got borrowed, and that I am surety for;" that his son said he could not give him any security unless he would give him a bill of sale of the store and stock of merchandise; that his son then gave him a bill of sale of the stock of merchandise. The elder Keith further testified that his son then owed him $2,800, and

that he was surety for him on a note to Mabel Keith for $3,000; that the interest had been paid on the indebtedness. P. J. Keith immediately placed the bill of sale of record, and at once took possession, along with P. L. Hansen, of the store. The new firm employed J. C. Keith as clerk at $100 a month, which salary was paid from month to month. He testified that, after the purchase of the stock of merchandise, his son did not have sufficient property left with which to pay his debts. Concerning the Ford automobile he testified that, a few days after the bill of sale for the grocery stock was made, and they had looked over the stock, he and his son concluded that it was not of sufficient value to pay his son's indebtedness to him and the debt to Mabel Keith on which he was surety; and his son offered to turn in the Ford automobile at the value of $300, and he accepted it.

About two months after the transfer, Deets obtained the judgment against J. C. Keith on which this action is based. This action was commenced about a year later. Both Keiths testified that, before the transfer was made, they asked Hansen if it would be agreeable to him, and he told them it would. Hansen also testified to the same effect. Hansen, as a witness, being asked, "Did they state reason why the transfer was being made?" answered:

"Some difficulty Mr. J. C. Keith was having. I don't pretend to tell what they were talking about three years ago. I knew that my partner, J. C. Keith, had some real estate deals, but I did not know how they were working out."

The consideration recited in the bill of sale was $5,800. The evidence shows that the stock of merchandise and book accounts were worth approximately $10,000. An invoice taken shortly after the transfer disclosed the value of the stock at $9,597, and the accounts at a little over $11,000, with merchandise bills in the amount of about $1,400 outstanding. The only evidence as to the value of the stock and accounts was that the stock was worth about 75 cents on the dollar, and the accounts about 25 cents, which would make the business worth approximately $10,000. The consideration paid by P. J. Keith in surrender of the two notes of J. C. Keith, and by assuming payment of the $3,000 note of J. C. Keith to Mabel Keith, on which he was surety, amounted to $5,800 for a one-half interest in a

business worth approximately $10,000, and the Ford automobile of the value of $300. We find nothing in the record to impeach the good faith of the transfers from J. C. Keith to his father, P. J. Keith. We have carefully examined and considered the whole record, and do not discover any taint of fraud in the transactions. The record discloses transactions wherein in 1917 the son had no property whatever. The father furnished him money and credit to buy a one-half interest in the store. The son and Hansen ran the business about five years. In the fall of 1921, the son owed his father $2,800, evidenced by notes, and owed his aunt, Mabel Keith, a note of $3,000, on which P. J. Keith was surety. There is nothing in the record to challenge the validity of this $5,800 indebtedness which the son owed, and which was due. The father demanded payment, which he was entitled to, and the son transferred the stock of merchandise and accounts and the Ford car in payment of said indebtedness.

We think, under the record, it must be said that the effect of the transfers in controversy was to give P. J. Keith a preference over other creditors of J. C. Keith, including William **2. FRAUDULENT** Deets; but, as has often been held, such transac-**CONVEYANCES:** tions do not of themselves establish fraud. The **preference to creditors: effect.** rule is well stated in *Farmers Loan & Tr. Co. v. Scheetz*, 196 Iowa 692, a case very similar to the one before us, where we said:

- "A failing debtor may lawfully exhaust his property to secure or pay some of his creditors, leaving others unprotected, provided only that his purpose in so doing is not tainted with intent to hinder or delay the creditors left unsecured. The fraud, if any, does not consist in the sale or disposal of his property, simply because it has the effect to hinder or delay some creditors."

Numerous cases might be cited, holding to the same effect. Some of them are: *Mahaska County v. Whitsel*, 133 Iowa 335; *First Nat. Bank v. Eichmeier*, 153 Iowa 154; *State Bank v. Schutt*, 174 Iowa 583; *State Bank v. Wolford*, 178 Iowa 89; *Swanson Auto. Co. v. Stone*, 187 Iowa 309; *Farmers & Merch. St. Sav. Bank v. Kriegel*, 196 Iowa 833; *Davis v. Schwartz*, 155 U. S. 631 (39 L. Ed. 289).

It is urged by counsel for appellee that the transfers involved, being between father and son, demand close scrutiny. Such proposition may be readily agreed to. We have kept that thought in mind in considering the record in this case. In *Swanson Auto. Co. v. Stone,* supra, we said:

3. FRAUDULENT CONVEYANCES: confidential relations: effect.

"It is, of course, true that the law will closely scrutinize transactions between close relatives, or members of the same family, where the effect of such dealings is to prevent creditors from reaching a debtor's property. But the fact of relationship between buyer and seller is not alone sufficient to sustain a charge of fraud, nor is the mere fact that the effect of the purchase and sale is to prevent a creditor of the seller from collecting his claim of itself sufficient to justify the court in setting it aside."

See, also, *State Bank v. Schutt,* supra; *First Nat. Bank v. Eichmeier,* supra.

We reach the conclusion that the decree and judgment entered in the court below cannot be sustained, and are reversed.— *Reversed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.